B. M. HUTCHESON ET AL. v. R. C. STORRIE.

No. 781.  Decided June 19, 1899.

**1. Street Improvement—Assessment of Abutting Owners—Constitutional Law.**

A city charter which authorizes the city council to improve the streets at the cost of owners of abutting property in proportion to frontage, without regard to special benefits to the property, is violative of sections 17 and 19 of the Constitution of the State and of the fourteenth amendment to the Constitution of the United States. Norwood v. Baker, 172 U. S., 269, discussed and followed, and Adams v. Fisher, 75 Texas, 657, overruled.  (Pp. 690-692.)

**2. Same.**

The Legislature can not authorize a municipal corporation to assess upon abutting property the cost of a public improvement, in a sum materially exceeding the special benefits which that property may derive from the work. (P. 692.)

**3. Same.**

The Legislature can not confer upon a municipal corporation the authority to make an assessment of the cost of a public improvement upon abutting property conclusive upon the owner without giving an opportunity to contest the question of benefits. (P. 692.)

**4. Same.**

Such assessment without opportunity for a hearing on the question of benefits is a nullity, and not void merely as to so much as may be shown to be in excess of the benefits derived. (P. 693.)

**5. Same—Proceedings for Contesting Assessment—Estoppel.**

A city charter empowered the city council to determine what streets should be improved, and whether such improvements should be paid for by the city or by the owners of abutting lots,—in which latter case the cost should be defrayed by the owners of the lots, etc., abutting on such street according to the cost of works in front of the particular lot, and provided for the making of assessment rolls fixing liability on such basis, and for notice to the persons affected to contest such assessment by petition before the council, in default of which they should be estopped from contesting the validity of the tax. Held, that such proceeding did not provide for or authorize a consideration of the question of benefits by the council, nor estop the owner from questioning the constitutionality of the assessment in a suit brought by the contractor upon certificates issued to him as liens against the property, for doing the work. (Pp. 693-696.)

**6. Same—Injunction.**

Neither did a requirement in the charter that upon final approval of the rolls by the city council any person deeming himself injured should apply to the proper court within five days for an injunction, "based on the facts alleged in such petition," or be estopped from denying the correctness of the roll, work such estoppel,—the court being only empowered thereby to restrain the council from doing acts contrary to the charter, and not to consider the question of benefits. (Pp. 696, 697.)

**7. Same—Constitution.**

The Legislature can not pass a law validating by estoppel an act that it is forbidden by the law to authorize. (P. 697.)

**8. Same—Recovery According to Benefits.**

A provision in the charter that if, for any reason, recovery can not be had upon the certificates in accordance with the assessment or the front foot rule, it may be allowed according to the standard of benefits to the lot, did not authorize or require the defendant to enter into the question of benefits in order to defend against recovery upon the invalid assessment under the front foot rule. (Pp. 697, 698.)

ERROR to the Court of Civil Appeals for the First District, in an appeal from Harris County.

Storrie brought suit against Bettie M. Hutcheson and her husband upon improvement certificates issued to him as contractor, against her property abutting on the highway improved. He had judgment enforcing the lien of the certificate, and defendants appealed. On affirmance of the judgment by the Court of Civil Appeals, appellants obtained a writ of error.

*Hutcheson, Campbell & Myer,* for plaintiffs in error.

*Ewing & Ring,* for defendant in error.—Inasmuch as it is axiomatic that the Legislature has all legislative power not forbidden to it by the Constitution, and since the provisions of that instrument as invoked, on principle and in the light of binding precedent, obviously interpose no barrier, the objections to the constitutional validity of the assessment must inevitably fall, it appearing to have been laid within the recognized scope of legislative discretion, which must be deemed conclusive in the instant case of all questions sought to be raised, in view especially of the deductions of fact which the trial court was warranted in making from the evidence.

The boundary of judicial power: Lytle v. Halff, 75 Texas, 137; Barker v. Torrey, 69 Texas, 12; Adams v. Fisher, 63 Texas, 655; Chase v. Swayne, 88 Texas, 225.

The validity of the charter under the section 48: Const., sec. 48, art. 3; Cool. on Tax., 2 ed., 207, 130; Suth. Stat. Con., secs. 329, 218; Higgins v. Bordages, 88 Texas, 461; Turner v. Cross, 83 Texas, 228; Cemetery v. Buffalo, 46 N. Y., 506; Raleigh v. Peace, 17 Law. Rep. Ann., 332; Baltimore v. Cemetery Co., 7 Md., 517; Patterson v. Society, 24 N. J., 385; State v. Newark, 27 N. J., 185; Sheehan v. Hospital, 50 Mo., 155; Bridgeport v. Railway, 36 Conn., 255; Farwell v. Des Moines, 66 N. W. Rep., 176; Eureka Case, 4 Sawy., 302, 317.

The question of local and public benefit: Adams v. Fisher, 75 Texas, 662; Investment Co. v. McClelland, 86 Texas, 180, 192; Lytle v. Halff, 75 Texas, 137; Chase v. Swayne, 88 Texas, 225; 2 Beach on Pub. Corp., secs. 1175, 1176, and collated cases; Spencer v. Merchant, 125 U. S., 345, 356; Cool. on Tax., 2 ed., 614, 616, 656, 661, 646, 656, 624, 625, 623 et. seq., 613, 614; 2 Dill. Mun. Corp., 3 ed., secs. 761, 738; Lewis on Em. Dom., sec. 4; Gates v. Independence, 110 Mo., 381; Taylor v. Palmer, 31 Cal., 240; Neenan v. Smith, 50 Mo., 525; Parlen v. Cavender, 56 Mo., 286; St. Louis v. Brester, 56 Mo., 350; Spencer v. Merchant, 100 N. Y., 585; Raleigh v. Peace, 17 Law. Rep. Ann., 332; Lovenberg v. City of Galveston, 42 S. W. Rep., 1024. Reviewed and criticised: Sealy v. Pittsburg, 82 Pa. St., 360; Hammett v. Philadelphia, 65 Pa. St., 146; Keith v. Philadelphia, 126 Pa. St., 581; Preston v. Rudd, 84 Ky., 150, compared with City of Ludlow v. Railway, 78 Ky., 360; Railway v. Portland, 25 Ore., 299; Howell v. Tacoma, 3 Wash., 711; Territory v. Daniels, 6 Utah, 253; Ellison v. Lindford, 25 Pac. Rep., 744; Tidewater Co. v. Coster, 18 N. J., 518; Chamberlain v. Cleveland, 34 Ohio St., 551, 557, compared with Parmalee v. Youngstown, 43 Ohio St., 1632; Cleveland v. Tripp, 13 R. I., 61; Stuart v. Palmer, 74 N. Y., 189.

The constitutional validity of the front-foot rule: Hughes v. Doyle, 44 S. W. Rep., 64, 65; Adams v. Fisher, 63 Texas, 651; same case, 75 Texas, 657, 660, 651, 656; Taylor v. Boyd, 63 Texas, 533, 537; Transportation Co. v. Boyd, 67 Texas, 153, 156; Cool. on Tax., 2 ed., 638; 2 Dill. on Mun. Corp., 3 ed., sec. 753; 25 Am. and Eng. Enc. of Law, p. 525, and cases in note on p. 509; Parsons v. District of Columbia (U.

S.), cited infra. Reviewed and criticised: Cool. on Tax., 2 ed., 647; Const. Lim., 6 ed., 625; Woodbridge v. Detroit, 8 Mich., 274; Motz v. Detroit, 18 Mich., 495; St. Louis v. Clemens, 49 Mo., 452; Gates v. Independence, 110 Mo., 374; Diggins v. Brown, 76 Cal., 318, 322; Parker v. Challis, 9 Kan., 111; City of Lawrence v. Killom, 11 Kan., 375.

The question of alleged inequality: Adams v. Fisher, 75 Texas, 663; Hagar v. Reclamation District, 111 U. S., 701; Beach on Pub. Corp., sec. 1195; Cool. on Tax., 2 ed., 607, 608, 164; 25 Am. and Eng. Enc. of Law, 525, and cases cited; Harrisburg v. McCormick, 129 Pa. St., 213; Beaumont v. Wilkesbarre, 142 Pa. St., 210; Stifel v. Brown, 24 Mo. App., 102; Parmalee v. Youngstown, 43 Ohio St., 162; Kalbrier v. Leonard, 34 Ind., 497; Taber v. Grafmiller, 109 Ind.,206; Leitch v. LaGrange, 138 Ill., 291. Conditionally cited: Keith v. Philadelphia, 126 Pa. St., 581; Howell v. Tacoma, 3 Wash., 711; Stewart v. City of Philadelphia, 7 Atl. Rep., 192; Preston v. Rudd, 84 Ky., 150.

The constitutional questions all foreclosed by decisions: Taylor v. Boyd, 63 Texas, 533, 536; Adams v. Fisher, 63 Texas, 651, 654; same case, 75 Texas, 660; Texas Transportation Co. v. Boyd, 67 Texas, 153, 156; Connor v. City of Paris, 87 Texas, 32, 37; Higgins v. Bordages, 88 Texas, 459; Storrie v. Cortes, 90 Texas, 283, 294; Lovenberg v. City of Galveston, 42 S. W. Rep., 1024, error refused; Hughes v. Doyle, 44 S. W. Rep., 64, 65; Suth. Stat. Const., sec. 320, p. 405; Roundtree v. City of Galveston, 42 Texas, 612; Allen v. City of Galveston, 51 Texas, 302; Galveston v. Heard, 54 Texas, 420; Highland v. Galveston, 54 Texas, 527; Galveston v. Loonie, 54 Texas, 515; Harris County v. Boyd, 70 Texas, 237; Frosh v. City of Galveston, 73 Texas, 401; Street Railway Co. v. Storrie, 44 S. W. Rep., 697, in which the court denied the sixteenth assignment, which claimed the enactment to be unconstitutional under the section 48 of article 3, Texas Constitution.

In respect to the claim of want of due process of law, it is settled that no notice whatever is necessary where the Legislature itself determines the benefits and makes the assessment, as is the case under the frontage rule, but only where there is a judicial or quasi-judicial inquiry in ascertaining the amount of the assessments, as under the value or benefit rule; and hence, in the instant case, no notice was indispensable, though the enactment does distinctly provide for appropriate notice both of the initial step and of the assessment sheet, thus filling the requirement of notice in any view. Adams v. Fisher, 63 Texas, 652; Taylor v. Boyd, 63 Texas, 534; Railway v. Kentucky, 115 U. S., 321; Spencer v. Merchant, 125 U. S., 345, and cases there cited; Parsons v. Columbia, (U. S. Sup.), decided April 11, 1898; Kelly v. Pittsburg, 104 U. S., 78; 25 Am. and Eng. Enc. of Law, p. 545, citing a number of cases to the point of the distinction claimed by the counter proposition; 2 Beach on Pub. Corp., sec. 1188, and cases cited in note; 10 Am. and Eng. Enc. of Law, 289, 290. See also, on general subject of constitutionality of local assessments, Bauman v. Ross, 167 U. S., 548; Craighill v. Lambert (U. S.), decided January 3, 1898, in which the court, upholding

extreme legislation on the subject, says: "Legislation of this charac-
ter, both in respect to its justice and its constitutional validity, has
been thoroughly discussed by the judicial tribunals of nearly all the
States in the Union."

The claim of denial of equal protection of the law has been, in effect,
fully answered in other portions of this brief, and it is sufficient here to
say that neither upon the facts nor in the teachings of the Federal
Supreme Court can support be found for the contention.  Lovenberg v.
City of Galveston, 42 S. W. Rep., 1024, 1026, and cases cited under
next preceding counter-proposition; Insurance Co. v. Chowning, 86
Texas, 655, 657; Magoun v. Trust and Savings Co. (U. S. Sup.), decided
January 28, 1898; Wurts v. Hoagland, 114 U. S., 606; Walston v.
Nevin, 128 U. S., 578, and cases cited.

The estoppel provisions of the city's charter extend to every irregu-
larity or defect in the proceedings, whether jurisdictional in the sense
of conditions precedent or not, provided the omissions were such as the
Legislature might have dispensed with in the first instance.   City
Charter, sec. 27, Sp. Laws 23d Leg., pp. 24-26; McMillen v. Anderson,
95 U. S., 37; Spencer v. Merchant, 125 U. S., 345; Thomson v. Lee
County, 3 Wall., 331; Lent v. Tillson, 140 U. S., 316; Cool. Const.
Lim., secs. 380, 382; Welty's Law of Assessments, secs. 197 et seq., 305;
St. Paul v. Mullen, 27 Minn., 79; Cook v. Slocum, 27 Minn., 509; City
of Clinton v. Walliker, 68 N. W. Rep., 431; 25 Am. and Eng. Enc. of
Law, pp. 54, 55, and cited cases.   Distinguished:  Taylor v. Boyd, 63
Texas, 533; Transportation Co. v. Boyd, 67 Texas, 153; Flewellin v.
Proetzel, 80 Texas, 191; Rhine v. City of McKinney, 53 Texas, 361.

BROWN, Associate Justice.—We omit many of the facts of this
case which are immaterial in considering the questions presented to
this court.   The following are the material facts:

Bettie M. Hutcheson, wife of J. C. Hutcheson, owned in her separ-
ate right a block of land containing about twenty acres fronting 647
feet on the north side of the Harrisburg road and some other lots upon
the said road,—all lying within the limits of the city of Houston be-
tween the International & Great Northern Railroad and the corporate
line of the city.

At a meeting of the city council of the city of Houston, held on
August 13, 1894, the council adopted a resolution declaring that the
improvement of the Harrisburg road from the International & Great
Northern Railroad tracks to the city limits was a public necessity.   The
resolution stated the different kinds of material of which the improve-
ment might be made and directed that bids for the work be solicited.
The third section of the resolution is in the following language:  "The
cost of constructing said improvements, except as to street intersec-
tions, together with the cost of collecting thereof, shall, as provided in
section 24 of the charter of said city, be wholly defrayed by the owner

of the lot or lots, block or blocks, or tracts of land when not divided into lots or blocks abutting on said portion of said streets or avenues to be so improved, and said improvements shall be paid for in five equal annual installments." The resolution was published as required by the provisions of the charter and the city engineer made specifications for the work, which were approved by the city council, and after due advertisement, the city council entered into a contract with R. C. Storrie to make the improvement ordered.

The city engineer, in accordance with the terms of the charter, made and filed a roll of ownership upon which the property of Mrs. Hutcheson was placed, and the cost of the improvement, according to the contract, was apportioned to the said property by the front foot thereof, as required by the charter to be done. The roll of ownership thus made out was filed with the secretary of the city, who gave notice of its filing, as required by the charter, and there being no objection presented on the part of Mrs. Hutcheson, it was approved by the council and improvement certificates were ordered to be issued to R. C. Storrie for the cost of the work, when approved by the board of public works. R. C. Storrie did the work according to the contract, and the improvement certificates were issued and delivered to him. Mrs. Hutcheson having failed to pay the installments, this suit was filed to enforce their collection, and the District Court entered judgment foreclosing a lien upon the property for the amount assessed, except the correction of some errors.

Mrs. Hutcheson's property was situated in a part of the city of Houston where there were very few houses of any kind, and most of them small and of little value. Much of the property in that vicinity was used for pasturage, and there were no water-mains or pipes, electric lights or sewerage in that portion of the city. As to whether the value of the property was equal to the amount assessed upon it for the improvement, the testimony was conflicting and the issue not determined by the Court of Civil Appeals. Mrs. Hutcheson offered evidence to show that there were no special benefits derived by her property from the improvements made, which was excluded by the court, and there was no evidence that such benefits did exist. The Court of Civil Appeals affirmed the judgment of the District Court, from which Mrs. Hutcheson and her husband have sued out this writ of error.

Plaintiffs in error present a number of objections to the judgment, all based upon the proposition that the charter of the city of Houston, in so far as it authorizes the city council to improve the streets at the cost of abutting property without regard to special benefits to the property, is violative of sections 17 and 19 of the Constitution of this State, which read as follows:

"Sec. 17. No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." * * *

"Sec. 19. No citizen of this State shall be deprived of life, liberty,

property, privileges, or immunities, or in any manner disfranchised,. except by the due course of the law of the land."

Also, that it is in conflict with the following provision of section 1 of the fourteenth amendment to the Constitution of the United States: "Nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The Court of Civil Appeals followed strictly the case of Adams v. Fisher, 75 Texas, 657, in which Judge Stayton said: "The charter .of the city of Galveston gives to its council the legislative power to determine whether such an improvement will be for the public interest, and also to determine whether it will be of such benefit to property fronting on that particular street to be improved as will justify the imposition: of a part of the costs of the improvement on the owners of such property, and its determination of this question must be deemed conclusive,"' and in support of the opinion Judge Stayton quoted from Ludlow v. Railway, 78 Kentucky, 360, as follows: "While assessments of this character, as distinguished from general taxation, rest upon the basis of benefits or presumed benefits to the property assessed, it is not essential to their validity that an actual enhancement in value or other benefit to the owner be shown. The passage of the ordinance by the city council, under the power granted in the charter, is conclusive of the propriety of the improvement and of the question of benefit to the owners of abutting property." In that opinion, this court followed the great weight of authority by which this extraordinary power has been sustained with remarkable unanimity. But in the case of the Village of Norwood v. Baker, 172 U. S., 269, recently decided by the Supreme Court of the United States, the rule announced in Adams v. Fisher has been completely overturned and all precedents establishing it have been set aside. We recognize the binding force of the decision of the Supreme Court of the United States upon this question, but we the more readily apply it because we indorse it as a timely and just announcement of the superiority of a constitutional guaranty over a rule of law established by the courts. We feel some satisfaction also in the fact that the Constitution of this State provides with equal fullness for· the protection of the rights of property under such circumstances as does the Constitution of the United States, and if the action now undergoing investigation is violative of the Constitution of the United States, it is more palpably a ·violation of the plainer provisions of the Constitution of the State of Texas.

The first question is, what scope are we to give to the case of Norwood v. Baker as authority in the decision of this case? Counsel for Storrie have presented an able and ingenious argument in which they endeavor to limit Norwood v. Baker by contrasting it with previous decisions of the same court, and by ascribing to the former decisions superiority, they seek to eliminate from the later case every point which contradicts a former decision. It is claimed that because the court says

Norwood v. Baker is not in conflict with the former decisions, that court did not intend to decide that which is in fact in conflict. The more reasonable conclusion is that the court did not understand the former cases to embrace the grounds upon which the latter case rests. The case mainly relied upon for this purpose is Parsons v. The District of Columbia, 170 U. S., 45, in which the assessment was made by an act of Congress, while in the case of Norwood v. Baker, it was made by a municipal corporation under an act of the Legislature. In the former case, the court distinguishes the two classes in the following language: "There is a wide difference between a tax or assessment prescribed by a legislative body having full authority over the subject and one imposed by a municipal corporation acting under a limited and delegated authority. And the difference is still wider between a legislative act making an assessment, and the action of mere functionaries whose authority is derived from municipal ordinances." The distinction drawn may not be sound, but the statement shows that the question decided in Norwood v. Baker was not determined in the case relied upon.

Norwood v. Baker establishes the following propositions which are applicable to the case at bar:

1. The Legislature of a State can not authorize a municipal corporation to assess upon abutting property the cost of a public improvement in a sum materially exceeding the special benefits which that property may derive from the work. The court said: "In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess,* a taking under the guise of taxation of private property for public use without compensation." It has been uniformly held that such assessments rest upon the grounds that the benefits conferred are equal to the demands made upon the property, but the courts, in applying the law to the particular cases, have heretofore ignored the principle upon which the authority rests and have held that the exercise of the power will be upheld although the facts out of which it arises do not exist, and that benefits will be presumed to equal the assessment.

2. The Legislature of a State can not confer upon a municipal corporation the authority to make such assessment conclusive upon the owner without giving an opportunity to contest the question of benefits. Upon that point the court said: "As already indicated, the principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement. But the guaranties for the protection of private property would be seriously impaired if it were established as a rule of constitutional law that the imposition by the Legislature upon particular private property of the entire cost of public improvement, irrespective of any peculiar benefit

accruing to the owner from such improvement, could not be questioned by him in the courts of the country. It is one thing for the Legislature to prescribe it as a general rule that property abutting on a street opened by the public shall be deemed to have been specially benefited by such improvement and therefore should specially contribute to the cost incurred by the public. It is quite a different thing to lay down as an absolute rule that such property, whether it is in fact benefited or not by the opening of the street, may be assessed by the front foot for a fixed sum representing the whole cost of the improvement and without any right in the property owner to show, when an assessment of that kind is made or is about to be made, that the sum so fixed is in excess of the benefits received." If the law under which the assessment in controversy in this suit was made did not afford to the property owner a fair opportunity to contest the correctness of the assessment made upon her property, she was not estopped to deny its validity.

3. In Norwood v. Baker, the Supreme Court of the United States laid down the rule that because the assessment was made under a law that did not afford property owners the opportunity to be heard nor empower the city authorities to consider the question of benefits, the assessment in that case was a nullity. Upon this proposition that honorable court said: "It is said that a court of equity ought not to interpose to prevent the enforcement of the assessment in question because the plaintiff did not show nor offer to show proof that the amount assessed upon her property was in excess of the special benefits accruing to it by reason of the opening of the street. This suggestion implies that if the proof had shown an excess of cost incurred in opening the street over the special benefits accruing to the abutting property, a decree might properly have been made enjoining the assessment to the extent simply that such cost exceeded the benefits. We do not concur in this view. As the pleadings show, the village proceeded upon the theory, justified by the words of the statute, that the entire cost incurred in opening the street, including the value of the property appropriated, could, when the assessment was by the front foot, be put upon the abutting property, irrespective of special benefits. The assessment was by the front foot and for a specified sum representing such costs, and that sum could not have been reduced under the ordinance of the village, even if proof had been made that the cost and expenses assessed upon the abutting property exceeded the special benefits. The assessment was in itself an illegal one, because it rested upon a basis that excluded any consideration of benefits. A decree enjoining the whole assessment was therefore the only appropriate one."

From the record, it appears that in determining the amount to be assessed against the property of Mrs. Hutcheson neither the city council nor the municipal officers considered the question of special benefits which might accrue to the land from the work; but proceeded upon the basis of the cost of the improvement to determine the amount. It follows that the assessment is void unless Mrs. Hutcheson is estopped

to set up the defense by a failure to enter a protest against the proceeding and to sue out an injunction against the council.

The charter of the city of Houston confers upon the city council full authority and control over its streets and alleys and empowers the council to determine what street or portion of any street shall be improved, and whether the cost of such improvement shall be paid by the city in whole or in part, or by the owners of the abutting property either in whole or in part. If the city council should determine to charge the cost or any portion of it upon the abutting property, then, by a two-thirds vote of all the aldermen, it must determine whether the improvement is necessary to the public interest. When these questions have been settled by the council, if it be decided that the cost of the improvement shall be paid by the owners of the abutting property, the charter provides that "the cost  *  *  *  shall be defrayed, in case of street improvements, by the owner or owners of the lot or lots, block or blocks, tracts of land, when not laid out into lots and blocks, abutting on such street or portion of street improved, according to the cost of work in front of the particular lot or block or tracts of land." The city council is also empowered to determine whether the work shall be paid for in money, bonds of the city, or improvement certificates, and to make a contract for it. After the contract has been made, it is the duty of the city engineer to make out a roll of property abutting on the street to be improved, and to specify upon such roll, among other things, "the total cost, as ascertained and calculated by the city engineer, of such improvements necessary to be borne by each and to be paid by each owner of such property as described in such roll." There is no discretion lodged with the city council in determining the assessment to be made upon the abutting property, but the charter absolutely fixes the rule by which the assessment is to be governed, and devolves upon the engineer the mere ministerial duty to ascertain by calculation what the work in front of the particular lot will cost, under the contract, according to specifications. The law prescribed the standard to be the cost of work done in front of the lot, the specifications showed the work to be performed, and the contract fixed the price. A calculation alone was necessary to ascertain the sum to be expressed on the roll. Neither the council nor the engineer could proceed upon any other basis than that expressed in the statute, for we must look alone to the charter for the powers to be exercised by these officials. If, however, there were room for doubt as to the rule by which the assessment is to be made, the charter would set that at rest, for in the next succeeding phrase of the same sentence is to be found the following provision: "And in case of sewerage or drainage improvements (the cost) shall be defrayed by the owner or owners of such lot or lots, block or blocks, or tracts of land, when not laid out into lots or blocks, according to the proportionate benefits of the lots," etc. It is apparent that in the enactment of these provisions in the same section and in the same sentence, the distinction between the assessment of the cost and the assessment of the

value of benefits was present in the legislative mind, and that the rule of assessing for street improvements according to the cost of the work, without regard to benefits, was intentionally and distinctly applied to that class of work with the intention to exclude benefits. Up to this point in the procedure, there certainly could have been no departure from the rule expressed in the charter by the city council or any officer engaged in the execution of the powers conferred,—special benefits could not have been considered; but it is claimed that the charter provides for a hearing before the council at which the rights of the parties might have been adjusted upon the basis of benefits, and that the plaintiffs in error are estopped to deny the validity of the assessment because they failed to call upon the council by petition to revise and correct the proceedings and remedy the wrong. The question arises, did the charter afford to Mrs. Hutcheson an opportunity to contest the mode of making the levy?

After the roll of ownership has been prepared by the city engineer and approved by the board of public works and by the city council, it must be filed with the secretary of the city, who is required to publish the following notice: "Persons owning property on (here insert the name of the street or streets, or description of portions of the same referred to in said roll, or a description of the territory or district to which the roll relates) are hereby notified that the roll of ownership showing the amount of the special assessment tax levied against the owners of property above referred to, to cover the cost of improvement made in accordance with the resolution of the city council relating to the same, adopted (here insert the date of the resolution), has been placed in the office of the city secretary for inspection, in order that all persons interested therein, or to be affected thereby, may have an opportunity of calling the attention of the city council to any errors or mistakes connected with such assessments levied against property owned by them, as shown in said rolls." The secretary is required to mail a copy of the notice to the postoffice address of the property owner. At any time within ten days after the first publication of the notice, the property owner may, "by petition to the city council, filed with the city secretary, object to any such acts and proceedings and show wherein they have been or may be wronged or injured thereby, and to ask for a revision or correction of the same; and they shall be permitted, and it shall be their duty, before the final approval of such roll, to appear in person, or by agent or attorney, before said city council, and not thereafter at any time before any other tribunal, fraud and collusion, which was then unknown and could not by reasonable diligence have been ascertained, excepted, and apply for redress for such wrong or injury, and for the correction of such errors as they may point out and establish to the satisfaction of said council; nor shall any such roll be finally approved by the city council after filing of such petition by any person so affected or liable to be affected by said proceedings, until such petition shall have been heard and acted upon by the city council, although

it shall not be necessary to incorporate in the minutes of said city council its action thereon; and it shall be the duty of any person who may deem himself injured by the action or nonaction of the city council in reference to the matters contained in such petition, within five days after the approval of such roll of ownership, to apply to the proper court for an injunction, based on the facts alleged in such petition, restraining further action on the part of the city officials, or any of them, in reference to the matter complained of in such petition, and to the extent of the petitioner's interest in the same; and neglect or failure so to do shall forever estop such petitioner and all parties claiming under him from denying the correctness of said roll or the regularity of all proceedings previously had in reference thereto, or the validity of the special tax therein assessed against the land owned by him."

The foregoing provision of the charter authorizes the property owner to call upon the city council to revise and correct errors committed in the proceeding had in assessing the cost of improvement against his property, but it does not empower the council to do anything that it or its officers could not have done in the first instance. The words, *"revision* and *correction,"* mean that the council may be called upon to review that which had been done and to make the proceedings conform to the law. Vinsant v. Knox, 27 Ark., 272. The city council and the officers acting under the authority of the charter of the city of Houston having no power in the first instance to consider the question of benefits in fixing the amount to be charged against Mrs. Hutcheson's property, a revision and correction of the acts done could not give relief against the wrong complained of. In support of this conclusion, we call attention to the potent fact that the city had entered into a contract with Storrie for the performance of the work at a stipulated price and with the agreement that he should be paid in improvement certificates which would hold a lien upon the property, before the amount of the assessment was ascertained. If the engineer, for instance, committed an error in estimating the cost of the work in front of Mrs Hutcheson's property, then a revision and correction of that act by the council could be had and the wrong could be corrected, because the contract itself furnishes the data and the correction would accord with the contract. If, however, the council had changed the basis of the assessment against Mrs. Hutcheson's property from the costs of the work to that of benefits received by the property, whereby the amount assessed would be lessened, the contract would have been annulled. A construction should not be placed upon the language that would empower the city to destroy the contract without the consent of Storrie. The claim that, upon petition of Mrs. Hutcheson, the council could have afforded relief from the unlawful exaction is wholly unsupported by the terms of the law and is in direct conflict with many of its provisions. The wrong did not consist in a failure to follow the directions of the law, but in obeying its unconstitutional requirements.

The authority conferred upon the court to issue an injunction re-

straining the council from proceeding further is limited to "the facts alleged in the protest" and is no broader than that vested in the council. The court is simply empowered, by writ of injunction, to restrain the council from doing acts contrary to the charter and to correct any errors which that body might have corrected.

It is claimed that the jurisdiction of the court must be held to be broad enough to embrace the subject of estoppel provided for in the law; therefore the court by injunction could inquire into and correct anything done which affected the validity of the levy, but we think that the estoppel, to question the "validity" of the tax, must be construed to forbid the owner to set up such invalidity as might arise from a want of compliance with the terms of the charter and not such as might grow out of want of authority in the city to make the assessment. The right to apply to a court for injunction is as above stated expressly limited to the facts alleged in the petition to the council; the authority of the District Court is revisory and confined to correcting the acts done by the council and city officers.

If the Legislature had enacted in plain words that a failure to apply for injunction against a levy of the cost of improvement upon the property should estop the owner to deny the validity of such assessment, the law would be void, because the Legislature could not validate by estoppel an act that it is forbidden by the Constitution to authorize.

It is asserted that Mrs. Hutcheson might have had the question of benefits investigated in this suit and the assessment reduced so as not to exceed the special benefits received. The charter provides: "And at all times and in all proceedings in any court in which the validity of any special tax assessment that might have been laid under the charter of the city of Houston or amendments thereto, as shown by any roll of ownership, purporting to have been prepared by the city engineer in accordance with the provisions thereof, may be called in question; a recovery shall nevertheless be had in such suit for such sum as ought to have been assessed against the tract of land involved, according to the mode of apportionment, provided in the law of said city applicable to such improvement, and if for any reason, in law or fact, such recovery can not be had, then a recovery shall be allowed, quantum valebat, not exceeding the contract price for the improvement in front of the lot or lots, block or blocks, or tracts of land involved, according to the front foot rule or standard; and if for any reason, in law or fact, recovery can not be had in either of the above modes, then recovery shall be allowed not exceeding the contract price, to the extent and according to the standard of benefits from the improvements in question to the lot or lots, block or blocks, or tracts of land involved."

The Legislature attempted to secure contractors for this class of work against all contingencies and to authorize them, in case their contracts and the proceedings by virtue of which their claims arose were unenforceable, to recover nevertheless from the property owners upon one of the grounds named. It is unnecessary for us to determine

whether the Legislature could effect such a purpose or not. The language does not purport to authorize the defendant in such proceedings to inaugurate the inquiry and the construction would conflict with that part of the charter which declares that the property owner shall not do that thing. Substantially the same proposition was presented in the case of Norwood v. Baker, where it was contended that the party who sought the injunction in that case should have shown that the assessment was in excess of the benefits received, and that the court should have rendered judgment for the amount that the property was benefited by the improvement. In answer to this proposition, that court said: "This suggestion implies that if the proof had showed an excess of cost incurred in opening the street over the special benefits accruing to the abutting property, a decree might properly have been made enjoining the assessment to the extent simply that such cost exceeded the benefits. We do not concur in this view. As the pleadings show, the village proceeded upon the theory, justified by the words of the statute, that the entire cost incurred in opening the street, including the value of the property appropriated, could, when the assessment was by the front foot, be put upon the abutting property, irrespective of special benefit. The assessment was by the front foot and for a specific sum representing such cost, and that sum could not have been reduced under the ordinance of the village, even if proof had been made that the cost and expense assessed upon the abutting property exceeded the special benefits. The assessment was in itself an illegal one, because it rested upon a basis that excluded any consideration of benefits. A decree enjoining the whole assessment was therefore the only appropriate one." The quotation thoroughly refutes the contention made in this case and needs no argument to support it. It would be quite unusual to require the defendant in a suit, upon a demand wholly invalid, to furnish the plaintiff a valid cause of action as a condition precedent to defending himself against the unlawful claim.

If the charter of the city of Houston, under which the assessment in this case was made, could, by any fair and reasonable construction, be held to secure the property owner the right, at a time when it could be made effective, to contest the validity of the levy because not made upon the basis of benefits, it would be the duty of this court to so construe it. But in order to justify such a construction, it should be so obvious that the property owner, upon a fair consideration of its provisions, would have known at the time of the proceeding that the remedy was afforded by the charter. If this court should force a construction of the charter which could not reasonably have been understood to be the meaning of the law at the time the acts were being performed, it would be not only judicial legislation but retroactive as well, which would be as unreasonable and arbitrary as the rule by which courts are required to conclusively presume that the city council has found the special benefits to be equal to the cost, when in fact there were no benefits and the council had no power to consider the question.

It is to be regretted that contractors and others may have been involved in financial loss by reason of an unconstitutional enactment of the legislative department, and courts will always preserve the rights of those who act in compliance with the law of the land, as far as it can be done lawfully, but the guaranties of the Federal and State Constitutions must not be subordinated to questions of finance nor sentiments of justice. Justice will be best preserved by upholding the limitations against the exercise of arbitrary power. When a law comes in conflict with the Constitution of the United States or of the State of Texas, then the law must yield and the Constitution be upheld and sustained.

We conclude that the assessment made in this case was void and that it gave no right against Mrs. Hutcheson, either of a personal nature or a lien upon her property, and that the pleadings and evidence conclusively show that no right of action can be shown. It is therefore ordered that the judgments of the District Court and Court of Civil Appeals be reversed and that judgment be here rendered for defendants, B. M. and J. C. Hutcheson.

*Reversed and rendered.*