## CITY OF PARIS v. BRAY et al.

(Court of Civil Appeals of Texas. Texarkana. Dec. 21, 1911. Rehearing Denied Jan. 11, 1912.)

1. MUNICIPAL CORPORATIONS (§ 443*)—PUBLIC IMPROVEMENTS — ASSESSMENTS—VALIDITY.

Paris City Charter (Sp. Laws 1905, c. 6, §§ 135–148) authorizes the city to levy assessments for street improvements, and section 145, as well as a general improvement ordinance, prohibits contracts for such improvements, except on public advertisement and competitive bids; and the city is also required to pass an ordinance ordering the proposed improvement and assessing the respective property, and to provide the manner and terms of payment and collection of the assessments. The general improvement ordinance also provides that the contract for the improvement shall not be let until after the passage of the ordinance finally ordering its construction. The special ordinance, ordering the paving of a street on which defendants' property abutted, provided that the assessments should be due and payable on the completion of the improvement in front of the premises. Held that, since the city council could have made the levy and assessment and required payment for the work before it was completed, or before the contract was let, an assessment, made after the work was completed, was not void because, after the contractor had abandoned the work, the city took over and finished the work, even if the city did not have power to construct the pavement.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 443.*]

2. MUNICIPAL CORPORATIONS (§ 486*) — PUBLIC IMPROVEMENTS—ASSESSMENTS.

The notice of assessment for street improvements gave a list of the names of the abutting owners, not including defendant's name, and recited that "said property owners are hereby notified to present objections to said proposed improvements," and there was nothing in the notice to show that abutting owners generally on the street, though not named, were required to appear, or to indicate to defendant that it included her property. An ordinance required such notice to be directed to such property owners "by giving the name of each owner of property abutting on said street." Paris City Charter (Sp. Laws 1905, c. 6, § 144) requires that a full and fair hearing before the council on all matters affecting property claimed to be subject to assessments be given to persons interested, and provides that the council shall make rules for granting an opportunity for such hearing to interested parties, and rules "providing for notice of such hearing." The notice authorized was either personal or by publication. The charter also required that a hearing upon objections shall not be had until at least five days after such notice, and that a notice shall not be deemed insufficient for failure to state the names of the owners or particularly describe the property, but it shall be sufficient to designate property as fronting on a designated street, and to designate the owners of such property. Held, that the publication of notice of the assessment was insufficient to notify defendant that her property was assessed, and hence was void; the fact that it also gave constructive notice of an assessment of property of her husband on the same street being immaterial.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1084–1090; Dec. Dig. § 486.*]

3. EVIDENCE (§ 31*)—JUDICIAL NOTICE.

The Court of Civil Appeals for the Sixth Supreme Judicial District must take judicial notice of Sp. Laws 1905, c. 6, constituting the charter of the city of Paris.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 40; Dec. Dig. § 31.*]

Appeal from District Court, Lamar County; T. D. Montrose, Judge.

Action by the City of Paris against E. F. Bray and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Wright & Patrick, for appellant. Burdett & Connor, for appellees.

LEVY, J. The city sued to recover personal judgment and for foreclosure of lien against real estate, claiming that appellees were owing the amount of $1,210.55, with interest and reasonable attorney's fee for forced collection, due as a paving assessment for street improvement assessed and levied under the authority of the city council against them and against certain real estate situated on such street. The court sustained a demurrer to the petition.

[1] In so far as it need be discussed now, the petition alleged, as being a due and proper compliance with the provisions of the charter and improvement ordinance of the city in reference to levying a street paving assessment, that, after the council declared by resolution the expediency of the improvement, competitive bids were advertised for, were received, the lowest and best bid declared, the assessments based on this bid and fixed, the bid accepted, and the contract drawn and executed, and that contractors began work on the improvement, and actually did a portion of it. The allegation then fol-

lows: "That on the 10th day of September, 1907, Henderson & Fulwilder having failed to continue work on said street in accordance with the terms of said contract, and their bond having been repudiated by their surety, plaintiff, under terms of said contract, took charge of same, and on September 23, 1907, made full and complete settlement with them and duly paid them for all work and material done, and took a transfer and release from them of all claims growing out of said contract, and since said time, and in accordance with the terms of the said contract, the work has progressed and payments have been made for the material and labor by the plaintiff, and that said work has been completed in accordance with the plans and specifications for same." It was upon this quoted allegation that the court reached the conclusion, and expressly made it a ground for sustaining the demurrer, that the city was not justified in proceeding to complete the work of improvement so abandoned by the contractors without any further public advertisement for competitive bids and letting contract to such bidder therefor; and therefore the act and doing of the city in proceeding to complete the unfinished work of the contractors rendered the assessment sued for void. It appears from the allegations that the city merely completed the unfinished work of improvement abandoned by the contractors, and did so in accordance with the original plans and specifications adopted, and without additional expense from the amount of the original cost, on which the assessment to each property owner was apportioned and fixed. As to whether such act of the city would affect the validity of the assessment would depend upon the power and authority of the city council to make and levy the same, and of the provisions of law in respect thereto. That the power and authority to make and levy the kind and character of assessment in suit is expressly conferred upon the city council by the charter is not denied. Sections 135 to 148, Special Laws of 1905, c. 6. By the charter and the alleged general improvement ordinance enacted thereunder, the city council is required, before it can fix and levy a paving assessment for street improvement against the owners of property on such street, to follow certain preliminaries, such as advertisement for public competitive bids, in accordance with plans and specifications prepared by the city engineer, and to receive and accept and declare the lowest and best bid. After the city council has accepted and declared the bid provided for, it is then required to pass an ordinance ordering the construction of the proposed improvement, and assessing against the owners of the abutting property their respective proportions of the cost of same, and at the same time provide the manner and terms of the payment of the assessments and the collec-

tion of the same. The provision as to letting the contract is found in section 5 of the improvement ordinance, which reads: "The contract for the construction of said improvement shall not be let until after the passage of the ordinance finally ordering the construction of the same." Section 145 of the charter provides: "No contract for such improvement shall be made except after public advertisement for competitive bids for the work." The terms of the charter and improvement ordinance expressly leave it to the discretion of the council to fix the time for payment to the convenience of the property owner in each instance, and to the extent of payment by installments covering a period of 20 years. In the special ordinance under which the particular improvement was ordered, it was provided that the respective amounts levied and assessed "shall be due and payable respectively on the completion of the improvement in front of the respective premises, and the city secretary is hereby instructed and ordered to proceed to collect the same when due."

Determining the power and authority of the city council, therefore, as to the validity of the assessment, it must be said that it was required of the city council to make and fix the assessment against each property owner on the public competitive bid to do the work declared and accepted by it. But it is not required, it must be further said, by the terms of either the charter, improvement ordinance, or the special ordinance ordering this work, that the city council should, in order to make a valid levy of the assessment, first let the contract and complete the work ordered. The charter merely provides, it is seen, that no contract shall be made, except after public advertisement for competitive bids for the work. The general improvement ordinance expressly provides, as seen, that the contract for the construction of the improvement "shall not be let until after the passage of the ordinance finally ordering the construction of the same." By further terms of such ordinance, the city council is merely required to include in the ordinance for construction of the work the assessment against the property owner. The special ordinance under which this work was ordered, however, did provide that the assessment should not be due and payable until the work was completed. The terms of the charter and improvement ordinance leave it to the discretion of the city council to fix the time the assessment should be payable. The terms of such ordinance provide in general language that the amounts levied and assessed "shall be due and payable respectively on the completion of the improvement in front of the respective premises." By this provision, though, the city council was merely undertaking to exercise its authority to fix a date for payment. It was required that some date should be fixed for payment,

and the date so fixed was ascertainable. So, if the provisions of the charter and general improvement ordinance enacted under authority of the charter authorized, as they did, the city council to make and levy the assessment against property owners in advance of the letting of the contract and the completion of the work, then the validity of the levy would not depend upon or be determined by any question of whether the contract was let or the work completed. The council could, as being within its authority, have required the payment at once in advance of the work's being begun. And because it was within the power of the city council to make and levy the assessment in advance of letting the contract and the completion of the work, the assessment would not be void upon the ground that the city finished the abandoned contract. Assuming, for the moment, that the power of the city did not extend to building the improvement, the wrongful exercise of such power would be referred alone to the subsequent doing of the work, and the doing of the work was not a condition to the exercise of the power to previously make and levy the assessment. And if the doing of the work in advance of the levy was not required to support the validity of the levy, then the assessment would not be void, because the time of payment was fixed "upon the completion" of the work. It was within the power of the city council to fix the time for payment, and to say "upon the completion" of the work would be only fixing such time. If it was within the proper exercise of power by the city council, as it was, to fix the time of payment, then it would be immaterial, in determining the time, who completed the improvement. It would be the mere fact of completion, in order to set the fixed time, and not by whom completed, that would be the material inquiry. It follows, we think, that the court erred in concluding that the allegations in hand rendered the assessment void, as being beyond the power of the city council to assess and levy. Having provided that the assessment was due and payable on completion of the work, it was incumbent on the city, in order to enforce the right to have payment, to affirmatively allege the fact of completion, and the allegations should be given that intendment.

[2] The judgment of the court dismissing the case, however, must be sustained upon an error appearing of record as fundamental against any recovery against E. C. Bray. It affirmatively appears from the facts alleged in the petition that Mrs. E. C. Bray had no notice of the assessment, and it would, for that reason, be void as to her. The property on which the lien is sought to be foreclosed is alleged to be the separate property of Mrs. E. C. Bray, and it is also alleged that the improvement was for the use and benefit of her property. The personal judgment is also prayed for against her. E. F. Bray, husband of Mrs. Bray, is made a party only pro forma. As going to show that she had been given notice and an opportunity to be heard as to the assessment against her and her property, the notice so given was pleaded. The notice as given was published in a newspaper, and recited that notice was thereby given that the city council, on January 14, 1907, passed a resolution ordering the city engineer to prepare plans and specifications for paving that portion of South Main street between the south boundary line of Washington street and north boundary line of the Texas & Pacific Railway right of way with vitrified brick; that, pursuant to that resolution, the city engineer presented an estimate, with plans and specifications, showing the cost, and prepared a list of names of owners of property in the district abutting thereon. The amount of the cost is given; then follows the list of names of property owners. In this list of names, the name of E. C. Bray does not appear. The notice continues: "Said property owners are hereby notified to present objections to said proposed improvements and introduce testimony to show that the estimated cost of the proposed improvements in front of their property exceeds the benefit to the property, and such other objections as they may have to the making of said improvements." The extent of the notice, when considered from the viewpoint of whether E. C. Bray had notice, was to state that the city council had declared the expediency of making certain proposed improvements on a part of South Main street, in accordance with plans and specifications, and at a certain cost; and that the specially named persons must appear at a designated place and time and offer objections, if any they had, to the making of the improvements. Admittedly her name did not appear in the list of names. The language "said property owners are hereby notified to present objections" in its context specially refers to the persons whose names appear in the list given. There was no other recital in the notice by which Mrs. Bray could have understood that any other property fronting on the street to be improved, besides the property of those specially designated, would be claimed to be subject to assessment. Nor was there any language to show her that owners generally, though not specifically named, of property abutting on the street must appear and make objections to the improvements or assessment. The width of the street to be paved not being given, there was no description to warn her that it reached to and included her property. Undoubtedly she had the right to have opportunity to appear and be heard before the assessment should be made. Hutcheson v. Storrie, 92 Tex. 685, 51 S. W. 848, 45 L. R. A. 289, 71 Am. St. Rep. 884. [3] It was pleaded that the notice was valid as to Mrs. Bray and in compliance with provisions of law in respect

142 S.W.—59

thereto. The ordinance was pleaded in full, and we are required to take judicial notice of the charter. Therefore as to whether such notice sufficiently complies with the provisions of law must be determined as a matter of law. Referring to the general improvement ordinance enacted by the city council, it is found, in section 2, that notice to property owners is provided for. Notice by publication in a newspaper is provided, and it is required that such notice shall be directed to property owners by giving "the name of each owner of property abutting on said street." If it was within the power of the city council to enact the ordinance and provide that form, then, testing the notice given by the requirements of the ordinance, it could not be said that the alleged notice was within its terms as to Mrs. Bray, or was sufficient to be the basis of any notice to her. The notice as published gave the names of certain property owners, but did not give the name of Mrs. E. C. Bray. The ordinance enacted by the city council, requiring the notice to be directed to each property owner by name, was, we think, clearly within and not beyond the sphere of the authority conferred by the charter. Section 144 of the charter expressly declares that any person interested in any property which may be claimed to be subject to assessment shall be entitled to a full and fair hearing before the city council on all matters affecting such property, or any claim of personal liability. Following the granting of the right to be heard, there is the express provision that "the city council shall make rules for granting an opportunity for such hearing to all parties interested before any special assessment is actually levied or finally determined upon, and rules providing for notice of any such hearing." In using the words "granting an opportunity for such hearing," evidently it was meant to say that the right of a hearing accorded by the charter was to be carried out and enforced by the city council by way of rules enacted, giving to the parties the hearing authorized, and for governing the manner of conducting the same. In using the words "providing for notice of any such hearing," evidently there is expressed the intention of confining the exercise of the power to the city council, and to make it the duty of the city council to adopt and prescribe such form and character of the notice, and the place and time of hearing, within the limits defined by the charter, as would be sufficiently comprehensive or particular to protect fully the rights of notice. The character of the notice to be given is authorized to be "personally or by publication for not less than ten successive days in a daily newspaper of general circulation in the city of Paris." Either mode of notice, it means, would be sufficient, leaving the authority to the council to say which should be provided. The charter next provides a limit of time, after notice, before the hearing could

proceed. But the provision in this respect does not undertake to fix the time at which the hearing shall take place, only providing that the hearing shall not be had "until at least five days after such notice," leaving the authority to the council to fix the exact appearance day after the lapse of the five days.

By the further provision, it is only undertaking, we think, to prescribe the essentials in the form of the notice that should be given, and to describe the legislative power of the city council in such respect. Such provision is: "A notice shall not be deemed insufficient for failure to state the name or names of the property owners, or failure to particularly describe the property. It shall be deemed sufficient to designate property as fronting on a designated street or designated portion of a street, and to designate the owners as the owners of such property; but a more particular designation shall not be improper." And it can here be remarked that, even if this provision of the charter should properly be said to supply a sufficient rule, by means of which the right to have notice may be enforced, and that any legislation by the council that either narrowed or conflicted with such rule would not be permissible, and that the validity of the form of the alleged notice should be determined by the rule of the charter, even then the alleged notice would wholly fail. While the charter undertakes to say that the property owners need not be notified by name, or the summons need not run in the particular name of the property owner, it at the same time does prescribe that as a substitute for the use of names of the property owners the notice shall designate (1) "the property to be assessed as fronting on a designated street," and (2) "the owner as the owner of such property." There are two requisites: The property claimed to be subject to assessment, and the owner of the same. Such provision does not mean, nor is it intended to mean, that a notice could run to specially named persons only, and not generally to property owners on the street, and then be deemed sufficient to notify all property owners on the street, whether named or not. The published notice here undertook to run to specially named persons, and no more. And if not intended to run only to specially named persons, then those not named would be misled by the language used. So the alleged notice is not in compliance with either the ordinance or charter, because it neither notifies Mrs. Bray by name, nor in general terms as the owner of property fronting on the designated street to be improved, nor properly construed has any language to show that all property abutting on the street, and owners of such property, should be subject to assessment. It is not to be understood that the ordinance is held invalid, for we think it valid. The city council had the authority, as before stated, to provide for summons, either by name or by the general language, as

owners of such property. But the particular form adopted must be followed, and it was, except as to Mrs. Bray. Constructive notice to the husband by name to appear would not be notice to the wife, and especially so here, because it appears that the husband also owned property on the street. It follows that the assessment must be held void as to Mrs. E. C. Bray for the want of any notice to her.

The judgment is affirmed.