### GRAY v. KIRK.

### No. 4505.

Court of Civil Appeals of Texas. Amarillo.

May 10, 1937.

Rehearing Denied June 21, 1937.

Bartlett, Thornton & Montgomery, of Dallas, for appellant.

H. D. Payne, of Floydada, for appellee.

JACKSON, Justice.

This is an appeal from the judgment of the district court of Floyd county denying appellant a recovery of a balance of $241.-99, with interest thereon at 8 per cent. per annum from January 3, 1929, evidenced by a paving certificate for the original sum of $345.77, issued by the city of Floydada, and to secure the payment thereof a lien was created against lots 5 and 6 in block 105 of said city, and personal liability fixed against the owner of said lots, J. T. Kirk, who is appellee herein.

The assessment certificate was issued under the law enacted by the First Called Session of the Fortieth Legislature, article 1105b, Vernon's Ann.Civ.St. and contained, among other things, the following: "This is to certify that by virtue of an ordinance of the City Commission of the City of Floydada, Texas passed on the 12th day of October, 1928, there was levied and assessed a special assessment amounting to the sum of Three Hundred Forty-five and 77/100 Dollars ($345.77) against property situated in said City, described as follows, to-wit: Lots 5 and 6 of the original townsite of the City of Floydada, and against J. T. Kirk, the owner of said lots."

The certificate stipulates that the amount therein named is payable in ten equal installments each bearing interest at the rate of 8 per cent. per annum after maturity, and contains this provision: "That all the proceedings with reference to making such improvements have been regularly had in compliance with the law and that all prerequisites to the fixing of the assessment lien against the property described in this certificate and all prerequisites to the fixing of the personal liability, evidenced by this certificate, have been duly performed."

The appellee as a defense attacked the validity of the certificate, because (a) the ordinance declaring the necessity for paving was not passed by a vote of two-thirds of the city council; (b) that the city of Floydada had in 1915 adopted the paving laws then in existence, none of which had been repealed, and had not adopted article 1105b, hence, was not authorized to issue the certificate under said article; (c) that said article was unconstitutional; and (d) that the tax was not levied with the consent of two-thirds of the city council as required by article 1033 R.C.S.

All these contentions were settled by the Supreme Court against appellee in Murray v. Reagan, 102 S.W.(2d) 202.

The appellee also challenges the validity of the certificate for the reason that as a part of the contract for paving the property, the contractor was required to execute and did execute a bond obligating him to make all necessary repairs on the streets paved for a period of five years after the acceptance of such paving, which requirement increased the cost of the paving to the property owner.

What is usually designated a maintenance bond was required, which provided:

"The condition of this obligation is such that if the principal shall make all necessary repairs to said street for the period of five (5) years, beginning January 35d, 1929, because of poor material or workmanship having been used, then this obligation shall be null and void, otherwise, to remain in full force and effect."

"It is generally held that a provision requiring the maintenance of the work as to repairs made necessary by improper workmanship or by the inefficient quality of the material used to withstand the wear required of it, is, in effect, merely a guaranty of the quality of the work and is valid." McQuillin Municipal Corporations, Second Edition, vol. 5, p. 343, par. 2059.

Again the same author says: "There seems to be a distinction between a provision requiring the contractor to keep the

pavement in repair generally, and one requiring him to make such repairs as may become necessary due to indifferent work or to the use of defective material. The latter provision is usually upheld as valid. It is said that a stipulation in a contract guaranteeing to maintain the pavement without further cost for a term of years does not impose upon the adjacent owner the cost of repairs, assuming that the municipality and not the owner is bound for such repairs generally. Such a guaranty is nothing more than a stipulation for a sound pavement at the outset." Page 622, par. 2179.

While there are some decisions to the contrary, the Texas authorities seem to have adopted the law as announced by Mr. McQuillin. In Booth et al. v. Uvalde Rock Asphalt Co. 296 S.W. 345, 348 (Writ Ref.), the court says: "In the construction contract between the city and appellee the latter guaranteed· the paving to be free of defective workmanship and materials, and in order to effectuate the guaranty bound itself to repair and correct any such defects occurring within five years, executing a bond in favor of the city to that end. Appellants contend that this amounted to a contract to maintain the improvement for the period stated, and that this provision would render invalid any subsequent assessment against the property owner, because it would necessarily increase the liability of the property owner beyond the cost of the actual improvement, as contemplated in the case of Hutcheson v. Storrie, 92 Tex. [685] 699, 51 S.W. 848, 45 L.R.A. 289, 71 Am.St.Rep. 884. The trial court held against this contention, and we think correctly so. This phase of the contract amounted to no more than a guaranty of the workmanship and material put into the original improvement; the cost of all repairs and maintenance, rendered necessary from accidental or other causes not attributable to defective work or material, was to be paid for the city. Such contracts should be favored and upheld, not only in behalf of the public, but of the property owner as well, for both are benefited by it and none injured. If such contracts be denounced, both the property owner and the public would be helpless to protect themselves against careless or dishonest contractors, and the law will not be given a strained construction in order to accomplish such result. The twelfth proposition of appellant is accordingly overruled."

The court finds that the suit was instituted on the paving certificate by appellant after default had been made in payment of the installments; that $75 was a reasonable attorneys' fee for appellant's attorneys. There is no controversy as to the amount of the unpaid balance on said certificate and the case appears to have· been fully developed; therefore the judgment of the trial court is reversed and here rendered that appellant have judgment for $75 as attorneys' fee, $241.99, balance on the certificate, with interest at the rate of 8 per cent. per annum from January 3, 1929, together with a foreclosure of his lien as it existed on October 12, 1928, and for the issuance of an order of sale as the law provides.