SMITH *et al. v.* MAYOR & COUNCIL OF DUBLIN *et al.*

1. Notice given by the municipal authorities that an election will be held in a
named city on the question of issuing bonds by that city, which contains no
information as to the amount of the bonds sought to be issued, or of the pur-
pose for which the proceeds thereof are to be used, save as expressed in the
following language : " Said bonds to be known as ' School and City Improve-
ment Bonds,' and to be issued to the aggregate amount of $25,000.00, in de-
nominations of from $1,000 to $5,000 each, as purchasers may desire, and
not more than $20,000 of the amount realized therefrom to be used for the
purpose of building and erecting a schoolhouse, and not more than $5,000 for
the purpose of enlarging and improving the light and water plant of said city,
and the surplus, if any, to be used by the mayor and council in such other
manner as they may see fit," does not meet the legal requirement that a notice
of this character shall " specify what amount of bonds are to be issued, [and]
for what purpose."
2. Before a judgment validating bonds sought to be issued by a municipal cor-
poration can lawfully be rendered, sufficient facts affirmatively showing that
such issue was sanctioned by two thirds of the qualified voters of such munic-
ipality must appear.

Argued June 3, — Decided July 19, 1901.

Validation of bonds.  Before Judge Hart.  Laurens superior
court.  April 17, 1901.

On March 12, 1901, an election was held in the City of Dublin
to determine whether bonds should be issued by that city.  In pro-
ceedings to validate the proposed issue of bonds Smith et al. became
parties by intervention, and made the following objections: They
deny that the election was legally and properly advertised; and
deny that the returns thereof showed on their face that it had re-
sulted in favor of the issuance of the bonds.  The election was
illegal and void, because the published notice thereof is insufficient,
in that it does not specify for what purpose the bonds are to be
issued, but leaves to the discretion of the mayor and council the
respective amounts to be expended by them for the purpose of
building a schoolhouse and of enlarging and improving the light and

water plant, and leaves it entirely within their discretion to expend an insignificant amount for these two purposes and have remaining a large surplus to be expended as they see fit, not even requiring that the same be expended for legitimate municipal purposes. Said notice is so vague, indefinite, and uncertain that it was impossible for voters at the election to tell, from an inspection of the notice, for what purpose the money to be realized from the sale of the bonds was to be expended. It does not state with sufficient definiteness the time when the bonds are to be paid off, what date they are to bear, or when the principal and interest shall be paid. Upon information and belief the intervenors charge that the mayor and council, seizing the opportunity when the city had had the misfortune to have its schoolhouse burned, and when the light plant was inadequate to supply the demand for lights, called the election ostensibly for these purposes, knowing that it would not carry if called for any other purpose, when in fact it is their intention to use a large part of the money realized from the sale of the bonds for purchasing a cemetery and retiring the floating indebtedness of the city. The published notice of the election was as follows:

"Notice of Election.

"In accordance with a resolution of the City Council of the City of Dublin, passed February 6th, 1901, notice is hereby given to the qualified voters of the City of Dublin, Georgia, that on Tuesday the 12th day of March, 1901, an election will be held as provided for by sections Nos. 377, 378, 379, and 380 of the Code of Georgia, 1895, Vol. 1, in said city, to determine the question whether bonds shall be issued by said city. Said bonds to be known as 'School and City Improvement Bonds,' and to be issued to the aggregate amount of $25,000.00, in denominations of from $1,000 to $5,000 each, as purchasers may desire, and not more than $20,000 of the amount realized therefrom to be used for the purpose of building and erecting a schoolhouse, and not more than $5,000 for the purpose of enlarging and improving the light and water plant of said city, and the surplus, if any, to be used by the mayor and council in such other manner as they may see fit. The said bonds to bear interest at the rate of 5 per cent. per annum from date of issue, payable semi-annually in gold at Hanover National Bank of New York, N. Y., the annual interest on said bonds, to wit $1,250, payable in semi-annual payments of $625 each, as aforesaid, each

year, and none of the principal amount of said bonds to become due and payable annually, but the entire principal amount of said bonds to become due and payable in gold at Hanover National Bank of New York, N. Y., after the expiration of thirty years from the date of issue, when said bonds shall be fully paid off. Those voting in favor of bonds shall have printed or written on their ballots the words 'For Bonds,' and those voting against said bonds shall have printed or written on their ballots the words 'Against Bonds.' This February 6th, 1901." Signed by the mayor and each of the councilmen.

The intervenors demurred to the answer made by the mayor and council to the petition of the solicitor-general, on the ground that it did not set out the resolution of council calling the election, the published notice of the same, the number of votes polled for and against bonds, the number of voters on the tally-sheets of the last general election in the city, the resolution of council declaring the result of the election, nor any other facts from which the court could judge as to the validity of the election. Error is assigned upon the overruling of this demurrer. The intervenors introduced the affidavits of three persons, that they attended a meeting of the citizens of Dublin in February last, called by the mayor and council in the interest of issuing bonds and for the purpose of securing votes for the same; and that in this meeting the mayor stated, in the presence of a majority of the councilmen, that it was the intention of the council to use a part of the money realized from the sale of the bonds for the purpose of purchasing a cemetery for the city, and a part for the purpose of retiring the floating indebtedness of the city, which statement the councilmen acquiesced in by their silence. The mayor's affidavit appeared, wherein he says that, in the meeting referred to, he called the attention of the public to the needs of the city generally, but in so doing he had no idea of using any of the $25,000 for any purpose other than those for which it was voted. He denies that he ever said that it was the purpose of the present city administration to use this $25,000 for any purpose other than that expressed in the notice, nor did any of the councilmen present at the meeting express any such purpose. It has been all along, and is now, the true intention and purpose of the present administration to use this $25,000 in the objects expressed in the published notice, and not for any other. The term

of office of the present administration expires about the first of July next, and deponent is not a candidate for re-election; and if these bonds are validated, it is not probable or likely that the money can be realized from their sale before the time just indicated.

The court rendered judgment validating the bonds, and the intervenors excepted.

*Akerman & Akerman,* for plaintiffs in error.    *H. G. Lewis,* solicitor-general, *S. B. Baker,* and *J. K. Hines,* contra.

LITTLE, J.    1. There are two points made in the record of this case.    The plaintiffs in error contend that the court erred in entering a judgment validating and confirming the bonds proposed to be issued, because the notice calling the election did not specify for what purpose the bonds were to be issued, and did not state with sufficient definiteness when they are to be paid, or when the principal and interest shall be paid; and because the notice leaves to the discretion of the mayor and council the amount to be expended for the purpose of erecting and building a schoolhouse, and the amount to be used in enlarging and improving the light and water plant.    Section 377 of the Political Code, which is copied from an act of the General Assembly of 1878, to carry into effect the constitutional provision forbidding the creation of a debt by a municipal corporation without the assent of two thirds of the qualified voters, declares that the officers of the municipality shall give notice of such election by the publication of a notice in a newspaper for a given time, notifying the qualified voters that on a day named the election will be held.    It further provides that "in said notice he [the officer] shall specify what amount of bonds are to be issued, for what purpose," etc.    It has been more than once ruled by this court that, in order to render the issue legal, this requirement as to notice must be strictly complied with.    *Bowen* v. *Greenesboro,* 79 *Ga.* 715; *Mayor of Athens* v. *Hemerick,* 89 *Ga.* 674; *Ponder* v. *Forsyth,* 96 *Ga.* 572.    An examination of the notice now being considered discloses that the bonds proposed to be issued aggregated in amount the sum of $25,000, which is a literal compliance with the statute.    In notifying the voters of the purpose for which the bonds were to be issued, it is stated in the notice that of this sum of $25,000 *not more than* $20,000 of the amount realized therefrom shall be used for the purpose of building and erecting a school-

house, and *not more than* $5,000 for the purpose of enlarging and improving the light and water plant of the city. To say the least, the notice is very indefinite as to what amounts *would* be used for these two purposes. When the people were told that not more than $20,000 should be used for the erection of a schoolhouse, they could from the notice itself form no reasonable idea how much would in fact be so used. True, by the notice a greater sum than $20,000 was not to be used for that purpose, but if $1,000 of the sum were so applied, the requirements of this notice would have been met. The same may be said with reference to the amount to be used in enlarging and improving the light and water plant; the notice in this respect in neither case informed the voters how much of the sum, if voted, would be used for either purpose. If $500 had been used in enlarging the light and water plant, and $1,000 in building the schoolhouse, it would seem that the terms of the notice would have been complied with, but then there would remain $23,500 of the bonds the use and disposition of which had not been directed by the voters. That this is a legitimate criticism as to the meaning and effect of the notice is found in the fact that the notice contains this further provision, that the surplus of the $25,000 which remains after completing and erecting the schoolhouse and enlarging the light and water plant shall be used by the mayor and council in such other manner as they might see fit.

The power given to a municipal corporation to create a new debt and issue bonds in payment thereof is an important one to the taxpayer. So much so that the framers of the constitution have declared that such a debt shall not be created without the assent of two thirds of the qualified voters of the municipality proposing to issue the bonds. In the same spirit, the legislature, which was charged with passing laws to carry this provision into effect, declares specifically that before the election is held the municipal authorities by publication shall inform the voters for what purpose the bonds are to be used. In the notice under consideration the general purpose is stated, but the amount to be devoted to this purpose is left indefinite, and provision is made therein that the mayor and council may use such part of the proceeds of the bonds as remains in any other manner they may see proper. The notice was not a legal one, and from it the voters of the City of Dublin were not legally notified of the purpose for which the

amount to be realized from the proposed issue of $25,000 of bonds was to be used. It follows, therefore, that the election held under the notice was void, the bonds could not have been legally issued, and they should not have been confirmed and validated. In this connection it may not be irrelevant to call attention to a further provision in the notice. After naming the rate of interest the bonds should bear, how and where it was to be payable, it is further recited in the notice that none of the principal amount of said bonds is to become due and payable annually, but the entire principal amount of said bonds is to become due and payable in gold at Hanover National Bank of New York, after the expiration of thirty years from the date of issue, when said bonds shall be fully paid off. Paragraph 2, section 7 of article 7 of the constitution of this State seems to contemplate that the principal and interest of all bonds issued by a municipality shall be paid off *within* thirty years from the date of issuance, because it declares that at or before the time a municipality shall incur any bonded indebtedness it " shall provide for the assessment and collection of an annual tax, sufficient in amount to pay the principal and interest of said debt within thirty years from the date of the incurring of said indebtedness." Without specifically determining that the notice in this regard is defective for a non-compliance with the statute, we content ourselves, in passing, by calling attention to this constitutional provision.

2. It is further contended by plaintiffs in error that the judge erred in rendering a judgment confirming and validating the bonds, because they say that the judgment is contrary to law and without evidence to support it. It is our opinion that this contention must be sustained. By the terms of an act approved December 6, 1897, provision was made for the confirming and validating of all bonds which might thereafter be issued for counties and municipalities under the constitution of this State. It is therein declared that when the returns of the election shall show prima facie that it resulted in favor of the issuance of bonds, the officers of the municipality charged with the duty of declaring the result shall notify the solicitor-general of the judicial circuit in which the municipality lies, of the fact that such election was held and resulted in favor of the issuance of bonds. It is prescribed that, after having been so notified, the solicitor-general shall file a petition in the superior court

in the name of the State of Georgia against the municipality desiring to issue bonds, setting out certain facts, to which petition the municipality is required to make answer. The act further provides that, after proper notice, the judge of the court shall proceed to hear and determine all of the questions of law and of fact in the case, and shall render judgment thereon; and that this judgment, if it confirms and validates the issue of bonds, shall never be called in question in any court in this State. In the present case a notice was given to the solicitor-general of the circuit in which the City of Dublin is situated, and in the name of the State of Georgia he filed a petition in the superior court of Laurens county, in which he recited the fact that the election was held, and that the returns showed prima facie that the election resulted in favor of the issue of bonds, etc., and prayed for an order requiring the City of Dublin to show cause why the bonds should not by the judgment of the court be confirmed and validated. To this petition the City of Dublin filed an answer in effect admitting the allegations of the petition. It is to be noted, however, that in neither the petition nor answer was it shown or intimated how many votes were cast at the election in favor of the issuance of bonds, nor how many against such issue, nor does that fact, nor the fact of the number of qualified voters residing in the City of Dublin, appear either in the petition, answer, or by evidence. Nevertheless by judgment and order of the court the bonds were validated. The petition merely states "that the returns of said election showed prima facie that said election had resulted in favor of the issuance of said bonds," and the answer admits this to be true, and says "that the returns of said election showed prima facie that the result was as aforesaid." These are but conclusions of the pleader without the facts upon which they are based, and are not sufficient, even though admitted in the answer, to base affirmative action upon, in a case of this character. It could never have been within the contemplation of the General Assembly that a judgment validating an issue of bonds should be made without due inquiry into the facts, to ascertain whether their issuance had been authorized by an affirmative vote of two thirds of the qualified voters of the municipality seeking to issue the bonds.

It is contended on the part of the defendants in error that the notice given to the solicitor-general was in all respects that required

by the act of 1897, and that the petition which was filed also contained the data which that act prescribes; and we presume that the judgment of validation was given on the admission by the city that the allegations in the petition were true. It will be noted that, by the first section of the act of 1897, the officers of the municipality who are charged by law with the duty of declaring the result of said election shall, within twenty days after so declaring the same, inform the solicitor-general. It is true that the act prescribes that the notification shall consist of the fact that an election for the issuance of bonds was held, and that it resulted in favor of the issuance of bonds, but the fact that the consolidating officers are required, after declaring the result, to inform the solicitor-general, would seem to indicate that it was in contemplation that he should be informed of the result, and not merely of the fact that the election was in favor of the issuance of bonds. However this may be, the meaning of the constitution is plain when it declares that the bonds shall not be issued without the assent of two thirds of the qualified voters; and when the act of 1897 provides that the judge of the superior court shall hear and determine all of the questions of law and of fact in the case, and shall render judgment thereon, certainly the act must be construed in the light of the constitutional provision, and the judgment which is rendered must adjudicate the underlying question of validity, whether the requisite number of voters sanctioned the issue. Certainly it was never the intention of the General Assembly that bonds which had not received the assent of the number of voters as required by the constitution could be validated. Taking together the constitutional requirement as to what shall make the issue of such bonds legal, and the terms of the act, it is a fair conclusion that the law requires that, before judgment of validation shall be made, sufficient facts must be made clearly to appear, to the satisfaction of the judge, to show that the election was in all respects regular, and that the issue of bonds was in fact authorized by the requisite constitutional majority. While the proceeding to validate a proposed issue of bonds is of course a judicial one, it is a prescribed method to ascertain, in advance of the issue, whether the bonds when issued shall bear on their face the imprint that they have been tested and not found wanting in any particular; this imprint renders further inquiry into their validity unavailing, and the property of the taxpayer must be

the source of payment. It is fair and right, then, that his assent must be obtained; if he gives it, he is bound by it; if the requisite number do not give it, none are bound by it. In adjudicating their validity his rights are passed on; he may or may not be a party, but whether he is or not, the constitution for his protection fixes a condition precedent to the issue. An admission by the corporation seeking to make the issue, that the notice was regular, or that the requisite number of voters assented to the issue, is good as far as it goes; but to irrevocably bind the taxpayer—and that is what validation means—chances of mistake of either law or fact must be eliminated, and without the ascertainment and finding that the particular facts necessary to render the issue of bonds legal under the constitutional requirement exist, validation should be refused. When the facts appear in such a manner as to evoke a judgment that the requirements of the law have been met, validation follows under the terms of the act; but general admissions in pleadings do not authorize a judgment of validation.

Such we take to be the spirit and meaning of the constitutional and statutory requirements incident to the issue of bonds by a county or a municipal corporation. In this case certain citizens of Dublin intervened in the exercise of the right given by the act of 1897, and denied that the returns of the election showed prima facie that the election had resulted in favor of the issue of bonds. These intervenors were made parties, and in the judgment validating the bonds the judge recites that upon considering the petition together with the petition and evidence of the intervenors the bonds were validated. Undoubtedly, as we have before said, the order of validation was made because of the admission by the City of Dublin that the allegations set out in the petition of the solicitor-general were true; but inasmuch as no information appeared either in the petition or answer which affirmatively showed that the bonds had been sanctioned as a matter of fact by two thirds of the qualified voters of the City of Dublin, the order of validation could not follow the admissions made. We are, therefore, of opinion that the judgment of validation was rendered without evidence to support it.          *Judgment reversed.   All the Justices concurring.*