10992.   PAULK *et al v.* BERRIEN COUNTY *et al.*

1. The transfer of this case to this court by the Supreme Court is equivalent to a holding that no constitutional question is involved.
2. The trial judge did not abuse his discretion in overruling the motion for a continuance.
3. Where the commissioners of roads and revenues of a county notify, by advertisement in a newspaper for thirty days, the qualified voters of that county that a bond election will be had on a fixed date, to determine whether or not the county shall issue bonds in the sum of $500,000, and the tax-payers by their vote authorize the issue of this sum in bonds, the judge of the superior court has no authority to validate, upon the request of the commissioners and over the objection of a number of tax-payers, bonds in the sum of $350,000.

DECIDED FEBRUARY 9, 1920.

(Certiorari was granted by the Supreme Court.)

Validation of county bonds; from Berrien superior court—Judge Thomas.   July 5, 1919.

The State of Georgia filed a petition against Berrien county, praying that the county show cause why an issue of $500,000 "road bonds," alleged to have been duly authorized by the voters of the county, should not be confirmed and validated.   The defendant filed an answer, alleging that the assessed value of the taxable property in the county was insufficient to authorize the amount of bonds which had been voted on by the people, and that the commissioners desired to issue only $350,000 in bonds, and prayed that the court pass an order confirming and validating bonds in this sum.   At the hearing the plaintiffs in error, taxpayers of the county, intervened and were made parties with the county.   The intervenors, through counsel, requested a postponement of the hearing, and the refusal of this request is now complained of.   They filed an answer attacking the legality of the election, and denying the authority of the court to confirm and validate the bonds in an amount other than the amount voted upon.   The court, after hearing evidence, passed an order confirming and validating bonds in the sum of $350,000, as prayed by the county authorities.   To this order the intervenors excepted.

*Quincey & Rice,* for plaintiff.

*C. E. Hay, solicitor-general, J. D. Lovett, W. D. Buie,* contra.

SMITH, J.   (After stating the foregoing facts.)

1.   The transfer of this case to this court by the Supreme Court is equivalent to a holding that no constitutional question is involved.

2. The trial court, in passing upon the motion for a continuance, probably and rightly took the view that this case affected not only several intervenors, but all the tax-payers of the county; and it appearing from the motion and the subsequent evidence that the intervenors were properly notified by advertisement of the time set for the hearing, and had collected all of their testimony and witnesses, and were as well prepared for trial as they would have been at a later date, there was no abuse of discretion in overruling the motion to continue. The mere fact that the solicitor-general, the county attorney, and counsel for the intervenors had agreed that the case be continued is entirely insufficient, in the absence of any approval by the judge of such an agreement, to change our ruling. Civil Code (1910), § 5724.

3. Section 440 of the Civil Code provides that thirty-days notice of a bond election shall be given in the newspaper in which the sheriff's advertisements for the county are published, notifying the qualified voters that on a day named an election will be held to determine whether bonds shall be issued by the county. This section concludes with the statement that said notice *"shall* specify what amount of bonds are to be issued, for what purpose, what interest they are to bear, how much principal and interest to be paid annually, and when to be fully paid off." It is well settled that these provisions are mandatory and must be strictly complied with. "When a county or municipality undertakes to incur a debt, and tax the people for the purpose of paying the interest and principal of that debt, they must comply with the law *strictly.* [Italics ours.] Nor does it matter with how great a unanimity the action of the mayor and council is approved by the people, still, if there are four tax-payers, or even one, objecting to incurring the debt, he or they have a right to appeal to the courts to prevent the illegal issuance of bonds as evidence of that debt." *Bowen* v. *Greensboro, 79 Ga. 709,* 714, 715 (4 S. E. 159, 162). That ruling was followed in the case of *City of Dawson* v. *Water Works Co.,* 106 *Ga.* 732 (32 S. E. 921), where it was held: "The policy of the constitution is against the incurring of municipal debts, and therefore the constitutional provision prescribing the manner in which debts must be incurred is to be strictly construed. It has been the uniform ruling of this court that not only the constitutional provision must be strictly construed, but that the act of the

General Assembly prescribing the manner in which an election shall be held on the question of bonded indebtedness shall be also strictly construed." See numerous cases there cited in support of this statement. In the case of *Smith* v. *Dublin*, 113 *Ga.* 833 (39 S. E. 327), the Supreme Court held that a bond-election notice which did not state the exact amount to be used for several designated purposes was insufficient at law. The notice under review in that case contained these words: "Said bonds to be known as 'School and City Improvement Bonds,' and to be issued in the aggregate amount of $25,000, in denominations of from $1,000 to $5,000 each, as purchasers may desire, and not more than $20,000 of the amount realized therefrom to be used for the purpose of building and erecting a schoolhouse, and not more than $5,000 for the purpose of enlarging and improving the light and water plant of said city, and the surplus, if any, to be used by the mayor and council in such other manner as they may see fit."

Clearly, therefore, under the settled law of our State, had the commissioners of Berrien county passed a resolution submitting to the voters of the county the question as to whether or not bonds in an amount not exceeding $500,000 should be issued, such a notice would have been invalid. This being true, it follows as a natural conclusion that where voters have authorized the issuance of $500,000 in bonds, neither the commissioners nor the judge of the superior court has any right to determine that a lesser amount shall be confirmed and validated. To illustrate, suppose the commissioners should decide to build a concrete dike or levee one hundred feet high, in order to prevent the overflow of a nearby river, which project would of course be of unlimited benefit to the public. Competent engineers advise that the construction of such a dike will cost $100,000, and it is proposed by the commissioners to the tax-payers that $100,000 in bonds be issued for construction. The tax-payers at an election duly advertised and held authorize the issuance of $100,000 in bonds for the purpose intended. After the election and before the validation of the bonds the commissioners determine that they will build a crude brick structure only ten feet high, and consequently entirely inadequate to withstand the pressure of the stream during the rainy seasons; and of their own volition they ask the court to validate only $5,000 of bonds. Surely the commissioners are not vested

with such right or discretion. Otherwise it would be legally sufficient to advertise a bond issue not to exceed a certain amount, and then permit the commissioners to fix the amount. This the Supreme Court has repeatedly held cannot be done. *Smith* v. *Dublin,* supra.

After a careful examination of the books we have been unable to find any case in Georgia adjudicating the exact question now under consideration. In making this statement we are not unaware of the case of *Heilbron* v. *Cuthbert, 96 Ga.* 312, 317 (23 S. E. 206, 207), where Justice Lumpkin said: "It was insisted in the argument for the plaintiffs in error, that the published notice of the election to be held in Cuthbert for the purpose stated, specified a larger amount of bonds than the municipal authorities could constitutionally issue in any event. Be this as it may, the petition for injunction presented no such objection as this to the legality of the notice; therefore, even if the proposed issue of bonds as stated in the notice would have been greater than the constitution authorizes, the trial judge was not, for this reason, necessarily constrained to grant an injunction restraining the issue of bonds to a lesser amount and undoubtedly within the constitutional limit. *If the point insisted upon here was meritorious, it ought to have been made in the petition presented to the trial judge"* (italics ours). This quotation clearly shows that the point made in the present case was not made, and consequently not decided, in that case. Also, the facts in that case are clearly distinguishable from the facts in this case. In that case an injunction was sought after a solemn judgment had been rendered validating the bonds, whereas in this case the plaintiffs in error intervened at the proper time and before any judgment was had validating the bonds.

This is not a case where the rights of a bona fide holder have become involved, and it might not be amiss to state in conclusion that where proceedings are brought to prevent the issuance of bonds, the law will be more strictly construed than where bonds have already been issued and have passed into the hands of bona fide purchasers.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*