202

## PEPPER v. SCOTT et al.
### No. 8976.

Circuit Court of Appeals, Eighth Circuit.
Oct. 14, 1931.

J. A. Tellier, of Little Rock, Ark., for appellant.

W. Leon Smith, of Blytheville, Ark. (Edward B. Downie, of Little Rock, Ark., and Jesse Taylor and Z. B. Harrison, both of Blytheville, Ark., on the brief), for appellees.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and DAVIS, District Judge.

DAVIS, District Judge.

The plaintiff in this action sought the cancellation of an assessment of taxes on real estate, and an injunction. The facts were stipulated. The decree entered dismissed the bill, and plaintiff appealed.

The real estate involved consists of two tracts of land in Mississippi County, Ark. One parcel of land was entered as a homestead by plaintiff, and the other parcel was entered as a homestead by one Cassidy, and subsequently purchased by plaintiff.

The Pepper homestead was entered on November 16, 1912. Final proof was made by the entryman on May 16, 1916, and accepted as sufficient by the government on October 13, 1916. The final certificate was issued to the entryman on February 18, 1919, and the patent delivered on July 18, 1919.

The Cassidy homestead was entered on January 20, 1913. Final proof was made by the entryman on February 25, 1916, and accepted as sufficient by the government on October 7, 1916. The final certificate was issued to the entryman on March 26, 1923, and the patent delivered on May 8, 1923.

The act of the Legislature of the state of Arkansas, creating drainage district No. 17 of Mississippi county became effective February 20, 1917 (Laws Ark. 1917, No. 103, p. 485), and the lands involved in this action were embraced within said district. The order of the Mississippi county court confirming the assessment of benefits and creating a lien on lands in suit was entered on February 4, 1918. The order levying the tax on said lands was entered on August 28, 1920.

It will thus be observed that final proof by each homesteader was made in 1916, and acknowledged by the government as sufficient, but before the final certificates were issued, the drainage act was adopted by the state, which resulted in the order of the county court confirming the assessment of betterments, and establishing a lien on the lands. The final certificates were withheld solely by reason of the fact that these lands were a part of a larger tract which was then in litigation. The certificates were issued when the litigation terminated.

The plaintiff contends that his lands were embraced in unperfected homestead entries on February 4, 1918, the date of the order of the Mississippi county court purporting to fix said liens, and that final certificates were not issued on said lands until February 18, 1919, and March 26, 1923, respectively; that the issuance of final certificates marked the passage of the equitable title from the United States to the homestead entryman, and, until the equitable title passed, said lands belonged to the United States, and were therefore immune from taxation by the state or any of its subagencies.

The position of defendants is: That the equitable title to land is acquired by an entryman when he accepts and complies with the conditions by which the government agrees to be bound, and makes sufficient and satisfactory proof thereof to the proper department, and the Land Department is without authority to divest the entryman of such title after accepting the proof as being sufficient.

So the ultimate question for determination is whether at the time the tax liens purported to have been established the lands were the subject of taxation at the hands of state authorities.

The statute provides that, when an entryman shall have complied with all the lawful requirements, he shall be entitled to a patent. 43 USCA § 164. The numerous adjudicated cases lay down the principle that, when an entryman has done everything required of him, and his proofs are accepted as sufficient, the equitable title to the land vests. This rule was announced in Hutchings v. Low, 15 Wall. 77, 87, 21 L. Ed. 82, and has been consistently followed in subsequent adjudications. In that case, the court said: "The question here presented was before this court, and was carefully considered, in the case of Frisbie v. Whitney, 9 Wall. 187, 19 L. Ed. 668. And it was there held that under the pre-emption laws mere occupation and improvement of any portion of the public lands of the United States, with a view to pre-emption, do not confer upon the settler any right in the land occupied, as against the United States, or impair in any respect the power of Congress to dispose of the land in any way it may deem proper; and that the power of regulation and disposition, conferred upon Congress, by the Constitution, only ceases when all the preliminary acts prescribed by those laws for the acquisition of the title, including the payment of the price of the land, have been performed by the settler. When these prerequisites have been complied with, the settler for the first time acquires a vested interest in the premises occupied by him, of which he cannot be subsequently deprived. He is then entitled to a certificate of entry from the local land officers, and ultimately to a patent for the land from the United States."

See, also, United States v. Detroit Timber & Lumber Co. et al., 200 U. S. 321-340, 26 S. Ct. 282, 50 L. Ed. 506; Doran v. Kennedy, 237 U. S. 362, 35 S. Ct. 615, 59 L. Ed. 996; Wyoming v. United States, 255 U. S. 489, 41 S. Ct. 393, 65 L. Ed. 742.

It seems to be also clearly established by the decisions that the beneficial interest acquired in property by an entryman under the homestead law is subject to taxation by the State or its legal subdivisions, prior to the passing of the legal title. In Wisconsin Central Railroad Co. v. Price County, 133 U. S. 496, 10 S. Ct. 341, 344, 33 L. Ed. 687, the rule was stated as follows:

"There is, however, an exception to this doctrine with respect to the public domain, which is as well settled as the doctrine itself; and that is, that where congress has prescribed the conditions upon which portions of that domain may be alienated, and provided that upon the performance of the conditions a patent of the United States shall issue to the donee or purchaser, and all such conditions are complied with, the land alienated being distinctly defined, it only remaining for the government to issue its patent, and until such issue holding the legal title in trust for him, who in the mean time is not excluded from the use of the property,—in other words, when the government has ceased to hold any such right or interest in the property as to justify it in withholding a patent from the donee or purchaser, and it does not exclude him from the use of the property,—then the donee or purchaser will be treated as the beneficial owner of the land, and the same be held subject to taxation as his property This exception to the general doctrine is founded upon the principle that he who has the right to property, and is not excluded from its enjoyment, shall not be permitted to use the legal title of the government to avoid his just share of state taxation."

See, also, Witherspoon v. Duncan, 21 Ark. 240; Id., 4 Wall. 210, 18 L. Ed. 339; Montana Catholic Missions v. Missoula County, 200 U. S. 118, 26 S. Ct. 197, 50 L. Ed. 398; Bothwell v. Bingham County, 237 U. S. 642, 35 S. Ct. 702, 59 L. Ed. 1157.

In the case now before the court, the homesteaders made final proof on May 16, 1916, and February 25, 1916, respectively. The receipt of these proofs was acknowledged by communications of October 13, 1916, and October 7, 1916, respectively, issued by the Land Office of the Department of the Interior, with directions that a copy of the letter be given the homesteader. These letters were to the effect that the homesteaders had complied with all conditions imposed by law with reference to the entry of the property, residence, and improvements thereon, and that the final proofs were sufficient, and no further requirements would be made of the

claimants; but that final certificate and patent would not issue until the litigation terminated. This position of the Department was later confirmed by issuing the certificates and patents. The decisions above cited lay down in clear language the doctrine that the "beneficial interest," that is, the equitable title to land, passes to the entryman when he has performed all conditions required of him by law. Admittedly, that was the case here, and the government gave solemn recognition to the fact by issuing the letters of October, 1916. The final certificate has been defined by the courts as an acknowledgment by the government that it has received full consideration under the law for the land, and that it holds the legal title in trust for the entryman. United States v. Detroit Timber & Lumber Co. et al., supra; Guaranty Savings Bank v. Bladow, 176 U. S. 448, 20 S. Ct. 425, 44 L. Ed. 540; Moses v. Long-Bell Lumber Co. (C. C. A.) 206 F. 51. The action of the Land Office in issuing the above letters is regarded as being, to all intents and purposes, the equivalent of the issuance of the final certificate. The homesteaders had complied with all requirements, their proofs were considered and declared to be sufficient, and a statement issued to them declaring that nothing further would be demanded of them. All of which was later confirmed by the formal execution of the grant. So far as the conveyance of the beneficial interest in the property was concerned, these letters left nothing to be desired.

Plaintiff relies upon the case of Irwin v. Wright et al., 258 U. S. 219, 42 S. Ct. 293, 296, 66 L. Ed. 573. That case has been carefully considered. What has been said above is not regarded as being in any manner in conflict with that case. The Irwin Case holds that the state may tax an entryman after the equitable title has passed to him, and that such a title vests when the claimant does all that is required of him by the law. The court said:

"On the pleadings and the agreed statement of facts, it is admitted that the plaintiff and his associates performed all the conditions under the Homestead Act and that they duly took all the preliminary steps enjoined under the Reclamation Act [43 USCA § 372 et seq.]; but it is averred, and not denied in the answer of the defendants, that a number of important steps remained to be taken by plaintiff and those for whom he sues in perfecting their claims under the Reclamation Act at the times these taxes were levied, and in the case of the plaintiff and some of the class, at the time of bringing this suit. * * *

"The county authorities in this case were in error in supposing that an equitable title passed from the government to the entryman here, when the latter had fulfilled the requirements of the Homestead Act. Had their entries been controlled solely by that act, they would have been right. But, as we have seen, their entries were made under that act as supplemented and qualified by the Reclamation Act; and the latter expressly entails on such entrymen additional conditions which must be performed before the equitable title or a right to a patent is secured."

The entryman had not met all the requirements of the law in that case, so that title had not passed to him, hence the state was without authority to levy a tax on land in question. The contrary is the situation found in the present case. The entryman fully complied with all conditions imposed, and the equitable interest vested in them, and the lands ceased to be a part of the public domain. Hence the tax was properly imposed.

There is another consideration in this case. It is shown by the agreed statement of facts that the drainage district and its officers, as well as the county court, at all times after the passage of the act of 1917, treated the lands of plaintiff as subject to their jurisdiction. It is also admitted that plaintiff had full knowledge of the establishment of the district, the assessment of benefits, the confirmation thereof, the levying of the tax, and the construction of the improvement. This entailed all the usual requirements for public notice and public hearings. The plan was confirmed, contracts let and the work fully completed years ago. Some of the ditches constructed touched and crossed plaintiff's land. His property was wild and unimproved, and was reclaimed by this drainage system. The district has put out two issues of bonds aggregating approximately four million dollars, and these have long since passed into the hands of the public. The plaintiff voluntarily paid his taxes from 1919 to 1926.

During all of that time plaintiff acquiesced and co-operated in the execution of the whole general plan. A suggestion, a complaint, a protest, timely made, might have avoided mistakes, led officers to become informed as to their authority, protected parties who have

relied on the regularity of the entire undertaking. Not an intimation of this character was forthcoming from plaintiff. He observed the progress of this public work from its inception to its consummation. He saw drainage ditches cut along and across his own land, and admits that its use and value was thereby enhanced. All of the improvements were made after the issuance of the final certificates, which plaintiff now concedes transferred the title to the entrymen. Then, eleven years after the final proofs were accepted, nine years after the tax lien was established, and eight years after he commenced the payment of his taxes, he appeals to a court of equity. It is too late. To grant the relief sought would be unjust and inequitable to others, and is, therefore, foreclosed to plaintiff.

In Penn Mutual Life Insurance Co. v. City of Austin, 168 U. S. 685, 18 S. Ct. 223, 228, 42 L. Ed. 626, the Supreme Court said that a delay of five years in contesting an ordinary taxing ordinance should defeat any right of recovery, and require the dismissal of the bill. It was there said: "The reason upon which the rule is based is not alone the lapse of time during which the neglect to enforce the right has existed, but the changes of conditions which may have arisen during the period in which there has been neglect. In other words, where a court of equity finds that the position of the parties has so changed that equitable relief cannot be afforded without doing injustice, or that the intervening rights of third persons may be destroyed or seriously impaired, it will not exert its equitable powers in order to save one from the consequences of his own neglect."

The decisions to the same effect are almost without number. Pierce v. Somerset Ry. Co., 171 U. S. 641, 19 S. Ct. 64, 43 L. Ed. 316; Shepard v. Barron, 194 U. S. 553, 24 S. Ct. 737, 48 L. Ed. 1115; O'Dea v. Mitchell, 144 Cal. 374, 77 P. 1020; Avery & Sons v. City of Atlanta, 163 Ga. 591, 136 S. E. 789; Dunn v. Fort Bend County (D. C.) 17 F. (2d) 329; County of Dakota v. Cheney, 22 Neb. 437, 35 N. W. 211; McCoy v. Able, 131 Ind. 417, 30 N. E. 528, 31 N. E. 453; Atwell v. Barnes, 109 Mich. 10, 66 N. W. 583; Kellogg, Treas., v. Ely, 15 Ohio St. 64; City of Bartlesville v. Holm, 40 Okl. 467, 139 P. 273, 9 A. L. R. 627.

The motion to dismiss the appeal, which was neither briefed nor argued, is overruled, and the decree entered by the District Court is affirmed.