In re AMERICAN RIO GRANDE LAND & IRR. CO.

No. 3765.

District Court, N. D. Texas, Dallas Division.

Nov. 29, 1937.

Goggans & Ritchie, of Dallas, Tex., D. W. Glasscock, of Mercedes, Tex., Ralph Wood, of Dallas, Tex., and Joel Berry, of Houston, Tex., for the motion.

Andrews, Kelley, Kurth & Campbell, of Houston, Tex., and R. E. Kirkpatrick, of Mercedes, Tex., opposed.

ATWELL, District Judge.

Among the claims filed in this bankruptcy reorganization proceeding is one by the Hidalgo and Cameron Counties Water Control and Improvement District No. 9, for $104,464.52, for flat rate assessments and irrigation charges, alleged to be due by the debtor for the years 1930 to 1937, inclusive; a lien is claimed on the land of the debtor, serviced during those years.

The debtor asks for the rejection thereof, upon a number of grounds, some of which are unnecessary to here notice, which go to the validity of the charges and the asserted lien. Chief among such reasons are:

(a) The contention that the district having chosen the ad valorem method of taxation may not substitute flat rate assessments against each acre, regardless of its value.

(b) The first four years are barred.

(c) The statute gives no lien rights against the land.

The claimant counters rather learnedly by seeking to maintain the proposition that assessments and taxes are words which are loosely used in the water statutes of Texas, and that one means the other, quite frequently, as it does in this particular case.

Secondly, that the debtor is estopped from attacking either the law, or the methods used under it, because it has been a beneficiary of the district's business, and has had the use of the water, without which its lands would have been useless. Also, that if the original acts do not give a lien on the land of the water user, that a subsequent act does, and if the plan followed by the district was not that authorized by the law, that another act of the Legislature validated its proceedings, and fixed the indebtedness and the lien.

Volume 21, Vernon's Civil Statutes of Texas, is fat with legislation for conserving rainfall and making fruitful, arid lands, which followed, to a large extent at any rate, the amendment to the Texas Constitution which is known as section 59 of article 16.

Article 7880, with its various subdivided sections (7880—1 et seq.), carries most of the legislation that is pertinent to this particular study. It shows the plan for the fixing of a district, the election of five directors, the proclamation by those directors of the method to be followed by them in raising the money with which to pay such indebtedness as they may incur for the benefit of the district. These methods include assessments, or ad valorem taxes. The provisions then require the compilation of a budget for each separate year, giving the date, and the fixing of the flat rate or the ad valorem tax rate upon the necessities of such budget; the method for the collection of the charge, whether by assessment or tax, from the users of the water, the declaration of a lien against the crops grown on the lands, and the personal liability of the owner of such lands.

Article 7880—110 provides that: "In the event the assessment made as provided for in the preceding section should be more than sufficient to meet the necessary obligations of the district, the balance shall be carried over to the next season; and in the event the assessments are not sufficient to meet the expenses the balance unpaid shall be assessed pro rata, in accordance with the assessment previously made for the then current year, and shall be paid under the same conditions and penalties within thirty days from the time such assessment is made." There is no provision in this 1925 act for any other lien.

By an act of 1929, c. 280, § 9, the Legislature, in what is now article 7880—77a, sought to tighten up the evident looseness of the 1925 act, and provided that: "All taxes, or charges, or assessments, imposed by a district, as provided for by Sections 106, 107, 108, and 109, [meaning subdivisions of article 7880 already mentioned by me] for the maintenance and operation of works, facilities and services of such district, shall be and constitute a lien against the lands as to which such taxes, or charges, or assessments, have been established; and no law applying to a limitation against actions for debt shall apply thereto; same shall not be barred by limitation."

In 1935 Acts 2d Called Sess. c. 372 (Vernon's Ann.Civ.St. § 7880—147w) the Legislature passed what is called a validating act which ratified and confirmed "all acts of the officials in * * * levying the taxes for such District," and "all acts of the Board * * * of Directors in such districts * * * purporting to levy taxes."

This rather brief and somewhat rough résumé is sufficient to give a basis for these conclusions:

### First.

■ The act of 1929, which definitely attempted to fix a lien upon the land of the water user, did not accomplish that purpose, so far as this debtor is concerned, because it carried no intimation in the caption of such a purpose. Section 35 of article 3 of the constitution of Texas provides that: "No bill * * * shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

A trial court hesitates to express any criticism of an act of the lawmaking power, but there are certain signboards that must be observed. Expressions must be given to the law, and the court is bounden by constitutional requirements and rules that are written and unmistakable. We may not optionally disregard them. The first test of an act of the Texas Legislature is to determine whether the constitutional notice of its contents is expressed in the caption. The 1929 act is devoid of any expression with reference to the lien. The citizen must read the whole act in order to find it. This requirement is not new.

It goes back to the Roman days. The citizen has a right to look at the headlines, if we may so say, and from there make up his mind as to whether the act is of any interest to him. Hamilton v. St. Louis Railway Company, 115 Tex. 455, 283 S. W. 475; Arnold v. Leonard, 114 Tex. 535, 543, 273 S.W. 799; Eastland County v. Ford (Tex.Civ.App.) 23 S.W.2d 848; Sutherland v. Board of Trustees (Tex. Civ.App.) 261 S.W. 489; Adams v. Water Works Company, 86 Tex. 485, 25 S.W. 605; Texas-Louisiana Power Co. v. City of Farmersville (Tex.Com.App.) 67 S.W. 2d 235; Ward Cattle & Pasture Co. v. Carpenter, 109 Tex. 103, 200 S.W. 521; Gulf Production Co. v. Garrett, 119 Tex. 72, 24 S.W.2d 389.

### Second.

■ The 1935 validating act, the pertinent portion of which is quoted, supra, broadly, and taken at its largest face effort, merely ratifies and confirms all acts of the officials in levying taxes and in purporting to so levy them. Even if we concede, which I think would be error, that the fixing of the flat assessment per acre, regardless of value, is "taxes," we find ourselves opposed by the exact word of the resolution of the board of directors in this case. They deliberately chose "ad valorem taxes," and then proceeded to levy flat assessments.

It seems to me that a validating act could not legally go to the extent of creating a lien which did not theretofore have some existence. Validating, seems to me, to cure something that was intended but which was done imperfectly. There was no authority in the act to fix a lien upon the land at the time this venture begun. The lien that was given was on the crops and the liability was against the owner of the land. There was no suggestion of any sort that any other lien was intended.

Hence, to seek to create a lien on the land by an act in 1935, which was not intended by the parties and which had not been even imperfectly created would be quite beyond the power of legislating body.

Validate is a derivative of valid, and means to make valid; to confirm. As used in a statute relative to assessments, the word has a peculiar and forcible meaning; namely, to fix irrevocably upon the land a lien for the amount of the assessment theretofore levied. 66 C.J. 415. It has been held to mean the irrevocable binding of the taxpayer. Thompson v.

Town of Frostproof, 89 Fla. 92, 103 So. 118; Smith v. City of Dublin, 113 Ga. 833, 39 S.E. 327. See, also, McNair v. Knott, et al., 58 S.Ct. 245, 82 L.Ed. ——.

These definitions presuppose antecedent facts which, in themselves, though attempting validity, had been insufficient to accomplish it. They cannot and do not mean that out of a clear sky, without supporting evidence, the Legislature may validate something that in fact never existed.

### Third.

■ The contention that section 59 of article 16 of the Constitution automatically fixes a lien upon the benefited lands is hardly supported by a careful reading of the amendment. The amendment has three provisions; a, b, and c. A is an announcement with reference to the conservation and development of the natural resources of the state, which include the control, storing, preservation, and distribution of storm and flood waters and the water of its rivers and streams for irrigation, etc. B is the authority for the creation of and a division of the state into districts for the accomplishment of such purposes. Such districts are to be governmental agencies, "with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law." C, "The Legislature shall authorize all such indebtedness as may be necessary * * * and all such indebtedness may be evidenced by bonds * * * to be issued under such regulations as may be prescribed by law and shall also, authorize the levy and collection within such districts of all such taxes, equitably distributed, as may be necessary * * * and also for the maintenance of such districts and improvements, and such indebtedness shall be a lien upon the property assessed for the payment thereof; provided the Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified property tax-paying voters of such district and the proposition adopted."

Subdivision c of the amendment unmistakably vests in the Legislature the power to make the amendment workable. It is to chart the course, describe the machinery, and arrange the plan whereby the people,

under the constitutional authority, which did not previously exist, could work out that conservation for which they had voted. There is no indicia of automatic lien fixing through and by the amendment itself; it is not automatically effective. It is a dependent power directly kin to and to grow out of what the Legislature says and does. To hold otherwise would be to make it a mischievous authority with such a reach that it would damn rather than bless.

I think this view is supported by the case of Lower Colorado River Authority v. McCraw, Attorney General, 125 Tex. 268, 83 S.W.2d 629, which is a recent decision by the Supreme Court of Texas, on the amendment and the effect of it. There is nothing in the State v. Bank of Mineral Wells (Tex.Civ.App.) 251 S.W. 1107 to the contrary.

### Fourth.

■ Suggestions on "due process," about and upon which numerous authorities have been collected and presented by both sides, are unnecessary here. We all understand that that phrase includes and means an opportunity to be heard and a resultant action in conformity with the truth deduced at such hearing. In the field of taxation there seems to be less stringency and less formality than in the field of judicial determination of controversy. Northern Pacific Railway Co. v. Adams (D.C.) 1 F. Supp. 163; Hagar v. Reclamation Dist., 111 U.S. 701, 4 S.Ct. 663, 28 L.Ed. 569; Myles Salt Co. v. Board of Commissioners, 239 U.S. 478, 36 S.Ct. 204, 60 L.Ed. 392; Bartlett Trust Co. v. Elliott (D.C.) 30 F.2d 700; Hancock v. Muskogee, 250 U.S. 454, 39 S.Ct. 528, 63 L.Ed. 1081; Fallbrook Irrigation Dist. v. Bradley, 164 U.S. 112, 17 S.Ct. 56, 41 L.Ed. 369; Hutcheson v. Storrie, 92 Tex. 685, 51 S.W. 848, 45 L.R.A. 289, 71 Am.St.Rep. 884; Browning v. Hooper, 269 U.S. 396, 46 S.Ct. 141, 70 L.Ed. 330; Hodge v. Muscatine County, 196 U.S. 276, 25 S.Ct. 237, 49 L.Ed. 477.

But this case is not dependent upon a determination as to due process, for that may be conceded. The district was voted. Notices were given. The landowners apparently participated and from year to year took part in the proceedings. But the point is that the method adopted at those hearings and the method proclaimed at those hearings for fixing the charges is not the method that was subsequently used.

### Fifth.

■ That the debtor has paid $120,000 and still owes $104,000 and has participated from year to year in the beneficial use of the waters furnished by the claimant, and that the debtor itself sold land in the irrigation district to the claimant, are insufficient to do more than prevent it from an entire repudiation of the debt. It is possible that the full reach of article 7880—110, supra, would deny the district the right to collect charges due for past years in which and for which there is no apparent use. Each year seems to stand on its own basis. The debtor urges that the district has money on hand, and that the affairs of each year have been closed, and that, therefore, if it were compelled to pay $104,000 more to the district, the district would have no legal use for the same.

It is suggested that more than a half million dollars are due from water users, and that this indebtedness hangs like a cloud over the people in that portion of the valley, where the 60,000 acres have been voted into this particular improvement; 12,000 out of this total belong to the debtor, and approximately 5,000 out of the 12,000 are irrigable. It seems to me that under the testimony developed here that it is wiser to refuse the claimant's lien, and to hold the debtor liable as to the amount of the debt. Such conclusion preserves the acts, which provide that there shall be no limitation, and at the same time saves us from the repudiation of a debt that really resulted in benefit to the user.

While it would seem that it is logical to read the statute as embodying a plan, an harmonious whole, a piece of machinery that will work the good that was needed, we must also satisfy the conscience of the righteous thinker.

See such cases as Pepper v. Scott (C.C. A.) 53 F.2d 202; Judith Basin Land Co. v. Fergus County (C.C.A.) 50 F.2d 792; Shepard v. Barron, 194 U.S. 553, 24 S.Ct. 737, 48 L.Ed. 1115; St. Louis Malleable Casting Co. v. Prendergast Const. Co., 260 U.S. 469, 43 S.Ct. 178, 67 L.Ed. 351; Pierce Oil Corporation v. Phoenix Ref. Co., 259 U.S. 125, 42 S.Ct. 440, 66 L.Ed. 855; Hurley v. Commission of Fisheries, 257 U. S. 223, 42 S.Ct. 83, 66 L.Ed. 206.

Mention should also be made of the fact that, in 1929, and prior to the 1929 act, the debtor sold a large amount of its own bonds, secured by a lien on its lands, $900,-000 of which, with $300,000 of accrued interest, is still unpaid. Also, that it placed, about the same time, a $300,000 first lien on some of its land which is now held by a life insurance company. The holders of the bonds and the deed of trust lien are here contesting the lien claim of the district.

An order may be drawn refusing the lien of the district and allowing the claim as unsecured.